**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
                          :
                          :

In re MOODY'S CORPORATION    :  CASE NO. 1:07-CV-8375-SWK
SECURITIES LITIGATION         :
                          :
                          :
                          :
                          :
                          :
------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**FOR RECONSIDERATION AND CORRECTION OF THE RECORD**

Sharon L. Nelles  (SN-3144)
Stephen Ehrenberg  (SE-3123)
Darrell S. Cafasso  (DC-7123)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  212-558-4000
Facsimile:  212-558-3588
Email:  nelless@sullcrom.com

*Counsel for Defendants*

March 5, 2009

Moody's Corporation ("Moody's") and Raymond W. McDaniel, Jr., Brian M. Clarkson and Michael Kanef (collectively, "defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Local Civil Rule 6.3 of the United States District Courts for the Southern and Eastern Districts of New York, for reconsideration of the Court's Opinion and Order, dated February 18, 2009 (the "Opinion"), which granted in part and denied in part their motion to dismiss plaintiffs' Consolidated Amended Complaint ("CAC"). Defendants are mindful that motions for reconsideration should not be used to relitigate issues already decided by the Court, *Shrader* v. *CSX Transp., Inc*., 70 F.3d 225, 257 (2d Cir. 1995), and seek reconsideration only of the Court's loss causation analysis. Such reconsideration is warranted because relevant factual information was misconstrued by the Court, leading to erroneous conclusions of law. (*See* Opinion at 33-38.) As set forth below, when the corrected facts are applied to the law, the Court's loss causation analysis is altered in two significant respects, both of which compel the conclusion that plaintiffs did not adequately plead loss causation. In addition, defendants respectfully request that the Court correct a misstatement of fact in the Opinion to avoid prejudice to Moody's in this matter as well as in proceedings outside this litigation. *See* Fed. R. Civ. P. 60(a).

## STANDARD OF REVIEW

A motion for reconsideration is governed by Local Civil Rule 6.3 and is appropriate where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see* Local Civ. R. 6.3 (reconsideration warranted on "matters or controlling decisions" that "the court has overlooked"). A motion for reconsideration may also be granted to correct "a clear error or prevent manifest injustice."

*Van Cleef & Arpels Logistics, S.A.* v. *Landau Jewelry*, 583 F. Supp. 2d 461, 463 (S.D.N.Y. 2008)

(citation omitted); *see also In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig*.,

2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008).  These standards are met here.

## ARGUMENT

**I.     THERE WAS AN INDUSTRY-WIDE DOWNTURN IN THE CREDIT RATINGS INDUSTRY AT THE TIME THE ALLEGED CORRECTIVE DISCLOSURES OCCURRED.**

The Court grounded its denial of defendants' motion to dismiss in large part upon

its conclusion that plaintiffs adequately pleaded loss causation by virtue of their allegation that

the market price of Moody's stock declined during the class period after alleged "corrective

disclosures" were made to the market.  (*See* CAC ¶¶ 399, 400.)  As this Court also recognized,

however, "[w]here there is a market-wide downturn in a particular industry, . . . Plaintiffs must

show that their loss was caused by the Defendants' fraud, rather than the intervening events, in

order to survive a motion to dismiss."  (Opinion at 37.)[1]  The Court then concluded that there

was no "market-wide downturn in the credit-ratings industry at the time the alleged corrective

disclosures occurred" because "while Moody's experienced a 28.8% drop [in its stock price],

S&P rose 2.5% and its parent company fell a mere 1.7%."  (Opinion at 37-38.)  It is this factual

finding that we respectfully submit constitutes manifest error in two respects.

*First*, the Court misconstrued the stock price data submitted by defendants in

support of their motion to dismiss, which includes stock price history for (i) Moody's, (ii) the

---

[1]     The Court properly relied for this conclusion on *Lentell* v. *Merrill Lynch & Co., Inc*., 396 F.3d 161, 174 (2d Cir. 2005)).  *See also In re AOL Time Warner, Inc. Sec. Litig*., 503 F. Supp. 2d 666, 680 (S.D.N.Y. 2007) (plaintiffs must plead "facts that would allow a factfinder to ascribe some rough proportion of the whole loss to [defendants' alleged] misstatements" (quoting *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007)).

McGraw-Hill Companies, Inc. ("McGraw-Hill") and (iii) the Standard & Poor's 500 Financials Index.  (*See* Cafasso Decl. Exs. B, L, M.)  Standard & Poor's, a credit rating agency competitor of Moody's Investors Service, Inc., is a division of McGraw-Hill.  It is not a publicly traded entity and it has no published share price.  The Standard & Poor's 500 Financials Index is a composite index of financial sector stocks, which is compiled and published by Standard & Poor's.  In measuring whether there was an industry-wide downturn in the ratings industry, however, the Court treated the performance of the Standard & Poor's 500 Financials Index as though it reflected the individual performance of Standard & Poor's itself, leading to the incorrect finding that "S&P rose 2.5%" while Moody's stock declined.  (Opinion at 38 (citing Cafasso Decl. Ex. M).)

   *Second*, the Court measured the comparative performance of the stocks over the full length of the class period (*i.e.*, February 3, 2006 to October 24, 2007).  As the Court noted, however, the issue is "whether there was a market-wide downturn in the credit-ratings industry *at the time the alleged corrective disclosures occurred*."  (Opinion at 37 (emphasis added).)  Plaintiffs allege that a "series of public disclosures" caused Moody's stock price to decline from "74.84 per share on February 8, 2007 to 43.33 per share on October 25, 2007."  (CAC ¶ 399.)  Thus, in determining whether there was an intervening cause of that decline (*i.e.*, a market-wide downturn affecting the credit ratings industry), the proper period to examine is from February 2007 to October 2007.  (*See* Opinion at 37.)  The comparative performance of Moody's and McGraw-Hill's stocks during the portion of the class period that preceded the alleged "series of public disclosures" does not and cannot reveal anything about whether the relevant price drop— alleged by plaintiffs to have occurred between February 2007 and October 2007—stemmed from alleged corrective disclosures as opposed to market decline.

Using the proper period for the analysis—"the time the alleged corrective disclosures occurred" (Opinion at 37)—demonstrates that, following a period of growth, there was, in fact, a sharp industry-wide downturn:  Moody's stock fell from $74.84 per share on February 8, 2007 to $45.93 per share on October 24, 2007—a drop of 38% (Cafasso Decl. Ex. B), while McGraw-Hill's stock fell from $69.74 per share on February 8, 2007 to $49.97 per share on October 24, 2007—a drop of 28% (Cafasso Decl. Ex. L).[2]  As this Court correctly noted, "[i]f there was [an industry-wide] downturn, one would expect the stock prices for Moody's competitors to fall along with that of Moody's."  (Opinion at 38.)  And that is precisely what happened here.

Because there was an industry-wide downturn, there is no basis for inferring, based on the decline alone, that the alleged "corrective disclosures" caused the decline of Moody's stock, and the Court's analysis must begin with the presumption that the declines were caused by intervening market events.  (*See* Opinion at 37.)  Consequently, plaintiffs were required to show "that their loss was caused by the Defendants' fraud, rather than the intervening events, in order to survive a motion to dismiss."  (Opinion at 37 (citation omitted).)  Plaintiffs made no such showing and thus failed to plead loss causation.  (*See* Defendants' Memorandum of Law in Support of Their Motion To Dismiss the Consolidated Amended Complaint, dated September 26, 2008 ("Mem."), at 19-21; Defendants' Reply Memorandum of Law in Support of Their Motion To Dismiss the Consolidated Amended Complaint, dated December 19, 2008 ("Reply Mem."), at 6-7.)

---

[2]     During this same period, the Standard & Poor's 500 Financials Index fell from 504.24 to 443.12—a drop of 12%.  (Cafasso Decl. Ex. M.)

**II.   PLAINTIFFS DID NOT ADEQUATELY PLEAD CORRECTIVE DISCLOSURES BECAUSE MOODY'S STOCK ALREADY LOST A SUBSTANTIAL PORTION OF ITS VALUE BEFORE REVELATION OF THE ALLEGED FRAUD.**

Defendants respectfully submit that there is a second matter of fact overlooked by the Court that requires separate reconsideration of the Court's loss causation analysis.  To plead loss causation, plaintiffs must allege that the "market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted."  *In re AOL Time Warner*, 503 F. Supp. 2d at 677; *see also Lentell*, 396 F.3d at 173 (to plead loss causation, "a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered").  It is well settled that plaintiffs cannot plead loss causation where the stock price lost a great portion of its value before the alleged revelation of the purported fraud.  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d 349, 366 (S.D.N.Y. 2008); *60223 Trust* v. *Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007).  In its Opinion, the Court found that plaintiffs pleaded four purported corrective disclosures of the alleged fraud occurring on the following dates:  (i) October 12-17, 2007; (ii) April 11, 2008; (iii) May 21, 2008; and (iv) October 22, 2008.  (*See* Opinion at 35-36.)  Each of these purported disclosures of the alleged fraud is insufficient to plead loss causation as a matter of law, however, because Moody's stock had already dropped from a high of $74.84 per share to $49.16 per share prior to the first corrective disclosure on October 12, 2007.  (*See* Cafasso Decl. Ex. B.)

The facts here cannot be distinguished from those in *60223 Trust* v. *Goldman, Sachs & Co.*  In *60223 Trust*, the investor plaintiff alleged that revelation of an allegedly fraudulent research report resulted in a drop in stock price of Exodus Communications, Inc. ("Exodus").  540 F. Supp. 2d at 451.  But Exodus' stock already had sharply dropped in the months preceding the alleged revelation of the fraud.  *Id.* at 460-61.  In holding that plaintiffs

- 5 -

failed to plead loss causation, the court explained: "The essential point is that by the time of the disclosures which allegedly caused the economic loss (as defined by the loss causation doctrine) the stock had already lost almost all its value." *Id.* at 461. Because "[t]he loss in value of the stock occurred gradually over the course of the entire class period, and the stock had lost most of its value before the [alleged revelation of the fraud]," the additional drop in value of the stock following revelation of the alleged fraud was insufficient to establish loss causation. *See id.*

Likewise, in *In re Merrill Lynch & Co. Research Reports Securities Litigation*, the court found that plaintiff failed to plead loss causation because the stock in question "had lost most of its value by the time the alleged materialization of the risk occurred." 568 F. Supp. 2d at 366. The court also noted that plaintiff had failed to "assert facts that distinguish between the alleged fraud and the market-wide collapse of Internet stocks as the cause" of his losses. *Id.* at 364 (citing *Lentell*, 396 F.3d at 174). The court therefore dismissed the complaint with prejudice for failure to plead loss causation. *Id.* at 366-67.

Here, Moody's stock dropped more than $25 per share from $74.84 on February 8, 2007 (the height of its value during the class period) to $49.16 on October 11, 2007 (the day immediately preceding the first alleged corrective disclosure). (*See* Cafasso Decl. Ex. B.) The decline up until October 11, 2007 could not possibly have been caused by revelation of a purported fraud the next day, October 12, 2007. *See In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 364; *60223 Trust*, 540 F. Supp. 2d at 461. Even though Moody's stock suffered additional declines following the alleged disclosures (as did the market generally), the "essential point" is that Moody's stock had already lost a great portion of its value by the time of the first alleged corrective disclosure. *60223 Trust*, 540 F. Supp. 2d at 461. And plaintiffs made no "attempt to explain how the decline of the stock price following the issuance of [the alleged corrective

disclosures] was attributable to the alleged fraud, rather than simply a continuation of the loss in value that afflicted [the stock] during the [market-wide] collapse." *In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 364; *see also Lentell*, 396 F.3d at 174 (plaintiff's claim fails when "it has not adequately plead[ed] facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events").

In short, the nine-month decline of Moody's stock price from February to October 2007 negates the conclusion that the drop in Moody's stock price was caused by the alleged fraud. Because plaintiffs have not identified any legally sufficient corrective disclosures that occurred before or during the precipitous decline in Moody's stock price from February to October 2007, their complaint cannot stand. (Opinion at 35-36; *see* Mem. at 16-19; Reply Mem. at 4-6.)

## III. THE COURT MISTAKENLY ATTRIBUTED A DOCUMENT TO MOODY'S THAT IS ACTUALLY A DOCUMENT CREATED BY STANDARD & POOR'S.

In its Opinion, the Court mistakenly attributed a document to Moody's that, in fact, is not a Moody's document. In particular, the Court quotes an instant message conversation between two analysts in support of its conclusion that plaintiffs adequately pleaded scienter as to Moody's. (*See* Opinion at 45.) That quote—that an issuance could be "structured by cows and [they] would rate it"—is taken from a Standard & Poor's document, not a Moody's document. (*See* Hume Decl. Ex. H (noting participant's address as *@standardandpoors.com* and that "IM session . . . may be monitored for compliance by McGraw-Hill").) Defendants respectfully request that the Court correct its Opinion in this regard so as to avoid incorrect attribution of this same document to Moody's in future proceedings as well as outside this litigation. *See* Fed. R. Civ. P. 60(a) ("errors" in "judgments, orders or other parts of the record . . . arising from oversight or omission may be corrected by the court at any time").

## CONCLUSION

Defendants respectfully ask the Court to reconsider its conclusion that plaintiffs adequately pleaded loss causation.  Record evidence in the form of stock price data shows that there was an industry-wide downturn at the time plaintiffs' alleged corrective disclosures allegedly caused Moody's stock price to fall.  This intervening cause defeats plaintiffs' loss causation allegations absent a showing by plaintiffs "that their loss was caused by the Defendants' fraud, rather than the intervening events, in order to survive a motion to dismiss." (Opinion at 37 (citation omitted).)  Because plaintiffs made no such showing, their complaint cannot "survive a motion to dismiss."  (Opinion at 37.)

Separately, this Court found that plaintiffs adequately pleaded corrective disclosures beginning on October 12, 2007.  By October 11, 2007, Moody's stock had dropped from its high of $74.84 per share to $49.16 per share.  (*See* Cafasso Decl. Ex. B.)  The corrective disclosures recognized by the Court cannot be the cause of plaintiffs' losses, however, because Moody's stock was in decline and had lost a great portion of its value before those disclosures were made.  *See Lentell*, 396 F.3d at 173-74; *In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 366; *60223 Trust*, 540 F. Supp. 2d at 461.  The complaint fails for this independent reason as well.


Dated: March 5, 2009
        New York, New York

/s/ Sharon L. Nelles
Sharon L. Nelles  (SN-3144)
Stephen Ehrenberg  (SE-3123)
Darrell S. Cafasso  (DC-7123)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*
