Ira M. Press
Roger W. Kirby
Daniel Hume
David Bishop
Aaron Hovan
KIRBY McINERNEY LLP
825 Third Avenue, 16th floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

Lionel Z. Glancy
Michael Goldberg
Frederick W. Gerkens III
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

Stuart L. Berman
Michael K. Yarnoff
Benjamin J. Hinerfeld
Lauren Wagner Pederson
BARROWAY TOPAZ
KESSLER MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Co-lead Counsel for Lead Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re MOODY'S CORPORATION SECURITIES LITIGATION | **CASE NO. 1:07-CV-8375-SWK** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      LEGAL STANDARDS ON RECONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS'
MISREPRESENTATIONS, RATHER THAN INTERVENING EVENTS,
CAUSED PLAINTIFFS' LOSSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.     The Court Properly Considered Moody's Stock Price Decline
During the Relevant Period in Relation to Appropriate Benchmarks . . . . . . . . . . 5

        B.     There is No "Presumption" That Declines Were
Caused by Intervening Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.     Comparing Moody's Stock Price Decline to S&P (McGraw-Hill) During
a Similar Period Supports, Rather Than Undermines, Loss Causation Here . . . . 8

III.    THE COURT PROPERLY HELD THAT THE COMPLAINT ADEQUATELY
PLEADS CORRECTIVE DISCLOSURES FOLLOWED BY SIGNIFICANT
NEGATIVE MARKET REACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

*60223 Trust v. Goldman, Sachs & Co.*,
    540 F. Supp. 2d 449 (S.D.N.Y. 2007) .................................................. 11

*City of Sterling Heights v. Abbey National PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006) .................................................. 7

*Associated Press v. U.S. Dept. of Defense*,
    395 F. Supp. 2d 17 (S.D.N.Y. 2005) .................................................. 4

*Coleman v. brokersXpress, LLC*,
    No. 08 Civ. 5085 (SAS), 2009 WL 539862 (S.D.N.Y. March 4, 2009) .............. 4

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................. 7, 10, 11

*Glidepath Holding B.V. v. Spherion Corp.*,
    590 F. Supp. 2d 435, 458 (S.D.N.Y. 2007) .................................. 8

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003) .................................................. 6

*In re Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008) .................................................. 10

*In re Countrywide Sec. Litig.*,
    No 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008) .............................. 8

*In re IMAX Sec. Litig.*,
    No. 06 CIV 6128 (NRB), 2008 WL 4307981 (S.D.N.Y. Sept 16, 2008) ....... 7, 10, 11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    568 F. Supp. 2d 349 (S.D.N.Y. 2008) .................................................. 11

*In re Moody's Corp. Sec. Litig.*,
    2009 WL 435323 (S.D.N.Y. Feb. 23, 2009) .............................. 1, 5, 7

*In re Northern Telecom Ltd. Sec. Litig.*,
    116 F. Supp. 2d. 446, (S.D.N.Y. 2000) .................................................. 8

*In re Pronetlink Sec. Litig.*,
    403 F. Supp. 2d 330, 336 (S.D.N.Y. 2005) .................................. 9

*In re Tower Automotive Sec. Litig.*,
    483 F. Supp. 2d 327 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Koury v. Xcellence, Inc.*,
    No. 08 Civ. 5409 (SAS), 2009 WL 562273 (S.D.N.Y. March 4, 2009) . . . . . . . . . . . 4, 10

*Lentell v. Merrill Lynch & Co.*, Inc.,
    396 F. 3d 161 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Montoya v. Mamma.com*,
    2006 WL 770578 (S.D.N.Y. Mar. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reese v. Bahash*,
    No. 08cv7202 (S.D.N.Y. Dec. 3, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*RST (2005) Inc. v. Research in Motion, Ltd.*,
    No. 07 Civ. 3737(VM), 2009 WL 274467 (S.D.N.Y. Feb. 4, 2009) . . . . . . . . . . . . . . . . 4

*Stumpf v. Garvey*,
    No. 02-MDL-1335-PB, 2005 WL 2127674 (D.N.H. Sept. 2, 2005) . . . . . . . . . . . . . . . . 9

*Swierkiewicz v. Sorema*,
    534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**INTRODUCTION**

By opinion and order dated February 18, 2009, this Court granted in part and denied in substantial part defendants' motion to dismiss plaintiffs' consolidated amended complaint (the "complaint"). *See In re Moody's Corp. Sec. Litig.*, No. 07cv 8375, 2009 WL 435323 (S.D.N.Y. Feb. 23, 2009) ("*Moody's*" or the "Opinion"). The Court's 52 page opinion is testament to the careful and thorough nature of the analysis underlying the Court's ruling. Defendants move for reconsideration under the guise that the Court overlooked crucial legal or factual issues, but their motion merely rehashes arguments already considered and rejected in the Opinion.

Defendants challenge only the Court's analysis of the complaint's loss causation pleading – an element of 10(b) that need not be pled with the particularly demanded by the PSLRA for the other elements of a securities fraud claim. *See, e.g., In re Tower Automotive Sec. Litig.*, 483 F. Supp. 2d 327, 348 (S.D.N.Y. 2007). Defendants say, variously, that the losses were caused by an industry-wide downturn, and that the downturn in Moody's stock was not caused by corrective disclosures. Defendants have previously made these arguments, and the Court has considered and rejected them. The arguments were without merit when originally made, and warrant no different outcome upon repetition.

Defendants argue that the Court erred by comparing Moody's stock price decline during the relevant period to the movement of the Standard & Poor's ("S&P") Financials Index. Defendants contend that Moody's stock should be compared to that of McGraw-Hill Company, parent of Moody's sole major competitor, S&P. Defendants argue that McGraw-Hill's stock price declined nearly as much as Moody's stock price, and therefore the complaint fails as a matter of law to plead loss causation. *See* Memorandum in Support of Defendants' Motion for Reconsideration

1

("Def. Br.") at 2-4. This argument fails on several levels.

First, defendants provide no support for their position that, where plaintiffs plead stock price declines in response to company-specific disclosures, dismissal as a matter of law is warranted if the resulting stock price decline is similar to that of a market or industry index of defendants' choosing.

Second, McGraw-Hill's stock price decline does not prove as a matter of law that Moody's decline was unrelated to the alleged misconduct, where, as here, S&P has been accused of engaging in the same type of ratings misconduct as Moody's. *See Reese v. Bahash*, No. 08cv7202 (S.D.N.Y. Dec. 3, 2008) (complaint, Dkt. #22), and the Congressional testimony attached as Exhibit A to the Declaration of Daniel Hume in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint ("Hume Decl. Ex. __") dated November 17, 2008 (Dkt. # 28).[1] To the contrary of defendants' argument, McGraw-Hill's stock price decline shows that the emerging truth about Moody's and S&P's flawed and conflicted structured finance ratings practices caused declines in the stock prices of both companies.

Third, even if dismissal could sometimes be obtained on the strength of a comparable index price decline, dismissal is not warranted where the relevant "industry" consists of just one other company besides Moody's, namely the malefactor S&P/McGraw-Hill. If anything, the limited

---

[1] Defendants' reconsideration motion also seeks "clarification" of the Opinion's discussion of S&P documents that were examined during the same Congressional hearings at which Moody's misconduct was being investigated. Def. Br. at 7. Specifically, Hume Decl. Ex. H attached a series of Moody's and S&P emails that were discussed in the Congressional hearings. Defendants note that one of those emails is referenced mistakenly in the Opinion as a Moody's rather than S&P document. (They correctly do not argue that the reference impacts the Court's scienter rulings.) Plaintiffs do not oppose defendants' Fed. R. Civ. P. 60(a) request at point III of their brief to correct the Opinion accordingly.

underlying population makes it likely that a company-specific decline in either Moody's or S&P's parent's stock would have a negative impact on the other. Certainly, the contrary cannot be determined as a matter of law.

Defendants also suggest that dismissal as a matter of law is required because most of Moody's stock price decline occurred prior to October 12, 2007, the date of the first corrective disclosure alleged by plaintiffs. Def. Br. at 5-7. This argument is premised on misapplication of the case law and two factual inaccuracies. First, defendants incorrectly suggest that the first corrective disclosure alleged in the complaint was on October 12, 2007. In fact, the complaint pleads corrective disclosures as early as July 2007. *See, e.g.*, complaint at ¶ 400; *see also* ¶376. Second, defendants incorrectly suggest that most of Moody's stock price decline occurred prior to October 12, 2007. In fact, the opposite is true. Between October 12, 2007 and the Congressional hearings of October 22, 2008, Moody's stock price declined from $49.40 to $21.61 per share. By October 27, 2008, Moody's stock price was down to $17.96 per share, a loss of more than $30 per share and a market capitalization decline of close to $7 billion. *See* ¶ 353.

Defendants have not carried the heavy burden of demonstrating that the Court's Opinion rested on a misapprehension of the law or the facts as they relate to plaintiffs' loss causation allegations. Accordingly, defendants' motion for reconsideration should be denied.

## ARGUMENT

### I. LEGAL STANDARDS ON RECONSIDERATION

Defendants' motion falls well short of the rigorous standards set forth in this district's Local Rule 6.3, the purpose of which is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional

matters." *Coleman v. brokersXpress, LLC*, No. 08 Civ. 5085 (SAS), 2009 WL 539862, *1 (S.D.N.Y. March 4, 2009) (Scheindlin, J.) (citations omitted).  Reconsideration motions must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Id*. (citations omitted); *see also RST (2005) Inc. v. Research in Motion, Ltd.*, No. 07 Civ. 3737(VM), 2009 WL 274467, *1 (S.D.N.Y. Feb. 4, 2009) (Marrero, J.) ("Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'") (citations omitted).

Where a party seeks reconsideration to alert the court to a controlling decision or data the court overlooked, that decision or data must, if considered, "reasonably be expected to alter the conclusion reached by the court."  *Koury v. Xcellence, Inc.*, No. 08 Civ. 5409 (SAS), 2009 WL 562273 at *1 (S.D.N.Y. March 4, 2009) (Scheindlin, J.) (citations omitted).  A claim that a factual matter was "overlooked" by the court need not be entertained if reference to the alleged factual matter was never previously made despite opportunity to do so.  *See id.* (a "motion for reconsideration is not 'an opportunity [to] mak[e] new arguments that could have been previously advanced.'") (citation omitted); *see also Associated Press v. U.S. Dept. of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced") (collecting cases).

As set forth below, defendants present no facts or law that either surfaced since the Opinion, or that the Court overlooked when writing it.  The Opinion is well reasoned and fully supports the Court's decision to sustain the complaint.  Therefore, the motion should be denied.

## II. THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS' MISREPRESENTATIONS, RATHER THAN INTERVENING EVENTS, CAUSED PLAINTIFFS' LOSSES

### A. The Court Properly Considered Moody's Stock Price Decline During the Relevant Period in Relation to Appropriate Benchmarks

The complaint pleads that the stock price of Moody's was inflated by false or misleading statements made during the class period. *See* complaint ¶¶ 54-286. Upon certain partial corrective disclosures, Moody's stock price declined. ¶¶ 353-403. Plaintiffs also pled that the price declines were not caused by broader stock market or ratings industry factors, as Moody's share price decline during the class period was far greater than the relevant indices. ¶ 401.

In their motion to dismiss, defendants introduced data to counter plaintiffs' loss causation allegations, including class period stock prices of Moody's, McGraw-Hill, and the S&P 500 Financials Index. The Court found that "defendants' evidence...disproves their clams...[that the]... the decline in Moody's stock price was due to the direct intervening cause... of the subprime mortgage crisis." *Moody's*, 2009 WL 435323 at *15-16. The Court recognized that, "while Moody's experienced a 28.8% drop, S&P rose 2.5% and its parent company [*i.e.*, McGraw-Hill] fell a mere 1.7%." *Id.* at *16. The Court then held: "Given these facts, the Court cannot conclude that there was an industry-wide downturn, and the question of loss causation due to an intervening event is reserved for trial." *Id.*

On reconsideration, defendants raise two issues concerning the foregoing. First, they argue that the Court "misconstrued" the stock price data supplied by defendants by referring to the "S&P 500 Index" as the stock prices for McGraw-Hill's S&P division. Def. Br. at 3. This objection merely identifies a possible typographical or clerical error that does not change the Court's analysis

5

or holdings. The point remains the same, *i.e.* that the pleading of loss causation is not negated as a matter of law by some non-Moody's related industry-wide decline.

Second, defendants say that the Court should have used a "control period" commencing in February 2007 and ending the last day of the class period, as opposed to looking at the full class period. Def. Br. at 3. This is a distinction without a difference. Even if use of the shortened control period were correct, it would still yield the same result – plaintiffs adequately alleged facts to show that their loss was caused by defendants' misrepresentations.[2]

### B.     There is No "Presumption" That Declines Were Caused by Intervening Events

Defendants misstate the legal standard for pleading loss causation. They say: "the Court's analysis must begin with the presumption that the declines were caused by intervening market events." Def. Br. at 4. In fact, the opposite is true.

The law in this Circuit is, "[i]f the loss was caused by an intervening event, like a general fall in the price of internet stocks, the chain of causation...is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Lentell v. Merrill Lynch & Co.*, Inc., 396 F. 3d 161, 174 (2d Cir. 2005) (*quoting Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). "However, 'when the plaintiff's loss coincides with a market wide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases,' and a plaintiff's claim fails when 'it has not adequately ple[]d

---

[2]     Even when using their truncated comparison period, defendants begrudgingly concede that the S&P 500 Financials Index fell 12% whereas Moody's stock fell 38%. Def. Br. at 4 n.12. Earlier, defendants conceded that the S&P 500 Financials Index "tracks Moody's peers." Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Complaint at p. 13-14 (Dkt. #21).

facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Lentell*, 396 F. 3d at 174 (citation omitted) (brackets in original). *Accord, Moody's*, 2009 WL 435323 at *15-*16.

Because of the factual nature of the inquiry, and because plaintiff at the pleading stage does not need to negate all other possible causes for the decline, courts routinely deny motions to dismiss premised on alternative causes for the decline. *See, e.g., In re IMAX Sec. Litig.*, No. 06 CIV 6128 (NRB), 2008 WL 4307981, *11 (S.D.N.Y. Sept 16, 2008); *City of Sterling Heights v. Abbey Nat'l PLC*, 423 F. Supp. 3d 348, 362-63 (S.D.N.Y. 2006); *Montoya v. Mamma.com*, No. 05Civ.2313 (HB), 2006 WL 770573, * 8 (S.D.N.Y. Mar. 28, 2006).

There is no evidentiary "presumption," as defendants would have it, but simply a requirement that plaintiffs sufficiently allege facts that provide a reasonably plausible explanation for why their losses were " 'caused by the alleged misstatements as opposed to intervening events.'" *Id* at *6 (citation omitted). *See also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) ("[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff" (*citing Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506, 513-15 (2002)).

Plaintiffs here adequately plead that company-specific information emerged revealing Moody's true state of affairs, resulting in material stock price drops. Complaint ¶¶ 399-400. Defendants provide no authority for their unique proposition that where the complaint, as here, pleads stock price declines in response to specific company disclosures, dismissal is warranted even if the resulting stock price decline correlates with an index of defendants' choosing.[3]

---

[3] Defendants' reliance on *Lentell* is misplaced. In *Lentell*, the court found that "[t]here is *no allegation* [in the complaint there] that the market reacted negatively to a corrective disclosure." 396 F.3d at 175 (emphasis added). Here, the complaint is replete with such allegations.

7

### C. Comparing Moody's Stock Price Decline to S&P (McGraw-Hill) During a Similar Period Supports, Rather Than Undermines, Loss Causation

A comparison of a defendant's stock price decline to a legitimate "industry index" does not compel dismissal in the face of a detailed pleading of price reactions to corrective disclosures.[4] In the event, this motion would still fail because defendants' "industry index" analysis is flawed in three respects.

First, even when looking at defendants' proposed "industry index" consisting of one other company (McGraw-Hill) and the "relevant time period" that defendants urge, Moody's stock decline of 38% substantially exceeds McGraw-Hill's 28% decline, clearly a statistically significant difference. *See In re Northern Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 461 n.5 (S.D.N.Y. 2000) (finding price decline spread greater than 6.3% in that case to be statistically significant).

Second, S&P is hardly an untainted member of defendants' two company "ratings industry index." S&P/McGraw-Hill has been sued in this district for engaging in essentially the same type of fraudulent conduct as Moody's involving conflicts of interest in structured finance rating during an overlapping class period. *See Reese, supra* (complaint alleging a class period from October 21, 2004 through March 11, 2008). S&P/McGraw-Hill was questioned and criticized by Congress right along with Moody's during the hearings concerning rating agency misconduct.

---

[4] *See Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 458 (S.D.N.Y. 2007) ("where a plaintiff adequately alleges that a defendant's fraud caused plaintiff's loss, the question of whether, in fact, the loss was caused by an intervening event (including a general market loss), the Second Circuit has held, 'is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss.'") (citation omitted). *See also In re Countrywide Sec. Litig.*, 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008) (denying motion to dismiss loss causation allegations because of the intervening "unprecedented" downturn in the credit and mortgage markets, holding: "The issue at present is *whether* the alleged securities violations caused a loss. Not *how much* of the loss the alleged violations proximately caused.") (Emphasis in original.)

(Hume Decl. Ex. A). Thus, Moody's and McGraw-Hill's "in tandem" stock price moves would actually support the Court's finding of loss causation. *See In re Pronetlink Sec. Litig.*, 403 F. Supp. 2d 330, 336 (S.D.N.Y. 2005) ("The complaint adequately alleges loss causation, because it describes a 'pump and dump' scheme whereby defendants did 'their best to pump up the very bubble that then predictably collapsed.'") (citation omitted).

Third, S&P and Moody's collectively make up 80% of the ratings industry. It is not implausible that an expert could ultimately testify that an observer of price reactions in such a small industry would expect price movements in competitors following negative announcements or disclosures by competitors, such that much of the industry would decline in "sympathy" with industry leaders. Thus, far from negating loss causation, an overall industry decline in such circumstances actually support allegations that Moody's announcements caused the overall decline. In any case, determination of this issue is not appropriate at the pleading stage,[5] and once again, there is no reason to disturb the Court's finding in this respect.

### III. THE COURT PROPERLY HELD THAT THE COMPLAINT ADEQUATELY PLEADS CORRECTIVE DISCLOSURES FOLLOWED BY SIGNIFICANT NEGATIVE MARKET REACTION

Defendants argue that the Court "overlooked" the "fact" that Moody's stock price lost a "substantial portion" of its value before the revelation of the fraud. According to defendants, this negates allegations of loss causation. Def. Br. at 5. This argument fails for two reasons. First,

---

[5] *See Pronetlink Sec. Litig.* 403 F. Supp. 2d at 336 ("Defendants' contentions that intervening causes...were to blame for the collapse of PNL's share price must await the trial."); *Stumpf v. Garvey*, No. 02-MDL-1335-PB, 2005 WL 2127674, *13 (D.N.H. Sept. 2, 2005) ("Even if, as defendants maintain, there had been an intervening event that interrupted the chain of causation [in this case 'the crash of the telecommunications market'], such a determination is a matter of proof after discovery, either at summary judgment or at trial, and is not to be decided here on a Rule 12(b)(6) motion to dismiss.").

defendants did not proffer this argument in their motion to dismiss and therefore offer no "facts" that the Court supposedly "overlooked." *See Koury,* 2009 WL 562273 at *1. Second, had defendants proffered this argument previously, it would fail because it is factually inaccurate. Moody's stock lost more value both in terms of pure dollar loss and as a percentage drop after, and as a direct result of, the alleged disclosures than before.

Loss causation is satisfied when a plaintiff demonstrates that a misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *See Moody's* at *14; *see also IMAX Sec. Litig.*, 2008 WL 4307981 at *11 ("The essence of loss causation is the notion that the alleged 'misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.'") (citation omitted).

At this stage in the litigation, the complaint need only put defendants on fair notice of the claim that the risks causing class members' losses were "within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 163 (S.D.N.Y. 2008); *see also Dura*, 544 U.S. at 346-47 (holding that to survive a motion to dismiss, a plaintiff need only provide "some indication of the loss and the causal connection [he or she] has in mind."). Plaintiffs have satisfied this burden.

The allegations compellingly demonstrate that defendants' misstatements regarding Moody's (i) independence, (ii) lack of ratings integrity, and (iii) rating methodologies all concealed the truth from the market that, when revealed in a series of disclosures, caused significant declines in the value of Moody's stock. Complaint ¶¶ 353-403. These disclosures caused Moody's stock to drop from above $70 per share in early 2007 to $49.40 on October 12, 2007, and then $21.61 on

10

October 22, 2008.

The Court overlooked none of this information. It found that plaintiffs alleged sufficient corrective disclosures regarding Moody's independence, integrity, conflicts of interest, and ratings methodology that had a significant negative impact on its stock. *See Moody's* at *15.

The Court found that these allegations amply satisfy Plaintiffs' burden of alleging that the market reacted to corrective disclosures. *See Id.*; *see also Dura*, 544 U.S. at 346-47; *In re IMAX*, 2008 WL 4307981 at *11. Defendants identify nothing in this regard that the Court overlooked. Instead, they mistakenly claim that Moody's stock lost most of its value before the first corrective disclosure on October 12, 2007, and then argue, upon this (mistaken) premise, that the complaint should have been dismissed. Def. Br. at 5.

Moody's stock did not lose most of its value prior to October 12, 2007. The opposite is true. From October 12, 2007 to October 22, 2008 (the day of the Congressional hearings), the decline was $27.79 – or 56.25% – about double the prior drop. In the three days following the hearings, Moody's stock price lost nearly $3 more, falling to $17.96.[6] Moreover, contrary to defendants' suggestion otherwise, the complaint clearly does plead partial corrective disclosures prior to October 12, 2007. ¶ 400; *see also* ¶376.

Accordingly, the Court correctly ruled that plaintiffs adequately plead loss causation and defendants offer no grounds for reconsideration of this point.

---

[6] Defendants cite *60223 Trust v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007), and *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008), to support their argument that loss causation cannot be satisfied when a company's "stock ha[s] lost most of its value before the [disclosures of fraud]." *60223 Trust*, 540 F. Supp. 2d at 461. Def. Br. at 6. These authorities are inapposite. In both cases, the companies at issue lost about 80% of their respective values *prior* to corrective disclosure. *See 60223 Trust* at 460-61 and *Merrill Lynch* at 364.

## CONCLUSION

For the reasons stated herein, defendants' motion for reconsideration should be denied.

| | |
|---|---|
| Dated:  New York, NY<br>           March 23, 2009 | **KIRBY McINERNEY, LLP**<br><br>By: _____/s/_____<br>        Daniel Hume<br>Ira M. Press<br>Roger W. Kirby<br>David Bishop<br>Aaron Hovan<br>825 Third Avenue, 16th Floor<br>New York, New York 10022<br>Tel:  (212) 371-6600<br>Fax: (212) 751-2540<br><br>Lionel Z. Glancy<br>Michael Goldberg<br>Frederick W. Gerkens III<br>**GLANCY BINKOW & GOLDBERG LLP**<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, California 90067<br>Tel:  (310) 201-9150<br>Fax: (310) 201-9160<br><br>Stuart L. Berman<br>Michael K. Yarnoff<br>Benjamin J. Hinerfeld<br>Lauren Wagner Pederson<br>**BARROWAY TOPAZ**<br>**KESSLER MELTZER & CHECK, LLP**<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Tel:  (610) 667-7706<br>Fax: (610) 667-7056<br><br>*Co-lead counsel for Lead Plaintiffs* |

Christopher Keller
Jonathan Gardner
Serena Richardson
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel:  (212) 907-0700
Fax: (212) 818-0477

*Counsel for Plaintiffs*