# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------  x
                                                  :
                                                  :
In re MOODY'S CORPORATION                         :  CASE NO. 1:07-CV-8375-SWK
SECURITIES LITIGATION                             :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :
------------------------------------------------  x
```

## MOODY'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Sharon L. Nelles  (SN-3144)
Stephen Ehrenberg  (SE-3123)
Darrell S. Cafasso  (DC-7123)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  212-558-4000
Facsimile:  212-558-3588
Email:  nelless@sullcrom.com

*Counsel for Defendants*

April 2, 2009

In this lawsuit, plaintiffs seek to represent a putative class of investors who purchased or acquired Moody's stock from February 3, 2006 to October 24, 2007 (the "class period"). (Consolidated Amended Complaint ("CAC") ¶ 1.) In their amended complaint, plaintiffs assert that during "the latter portion of the class period," there were a "series of public disclosures" that revealed the falsity of Moody's prior statements concerning its structured finance rating practices. (CAC ¶ 399.) Specifically, plaintiffs assert that public disclosures concerning Moody's rating practices caused Moody's stock price to decline "from $74.84 per share on February 8, 2007 to $43.33 per share on October 25, 2007." (CAC ¶ 399.) Moody's has countered that, *inter alia*, the decline in its stock price could not have been caused by those disclosures as a matter of law because (i) the disclosures did not reveal the falsity of any prior statements made by Moody's and (ii) there was an intervening cause of the decline—a market-wide downturn.

In its February 18, 2009 Opinion and Order (the "Opinion"), the Court concluded that plaintiffs adequately pleaded loss causation. In so doing, the Court recognized four "corrective disclosures" spanning from October 12, 2007 to October 22, 2008. (Opinion at 35-37.) The Court then found that there was no intervening cause of the decline in Moody's stock price because Moody's direct competitor—the McGraw-Hill Companies, Inc. ("McGraw-Hill")—did not suffer a similar downturn in stock price. (Opinion at 38.)

Defendants have requested the Court to reconsider its loss causation analysis for two reasons. *First*, in assessing whether there was an intervening cause of the decline in Moody's stock price, the Court examined the putative class period (*i.e.*, February 3, 2006 to October 24, 2007) rather than the period when, according to plaintiffs' amended complaint, corrective disclosures caused Moody's stock price to drop (*i.e.*, February 8, 2007 to October 25,

2007).  (*See* CAC ¶ 399.)  When this period is considered, the record evidence shows that

Moody's stock price declined as part of an industry-wide downturn.  (*See* Memorandum of Law

in Support of Defendants' Motion for Reconsideration and Correction of the Record ("Mem.") at

2-4; Cafasso Decl. Exs. B, L, M.)  Thus, plaintiffs' complaint cannot "survive a motion to

dismiss" without adequate allegations "that their loss was caused by the Defendants' fraud,

rather than the intervening events."  (Opinion at 37.)  Plaintiffs do not and cannot make this

requisite showing.

*Second*, the four corrective disclosures recognized by the Court are insufficient to

support loss causation in this case as a matter of law because, by the time the first of those

disclosures occurred on October 12, 2007, Moody's stock was *already* in precipitous decline.  A

purported revelation of "fraud" on October 12, 2007 plainly cannot be the cause of the drop in

Moody's stock price that began nine months earlier in February 2007.  Moreover, the fact that

Moody's stock was in a nine-month period of decline before the first corrective disclosure leads

to a finding that any loss occurring after that date resulted from reasons unrelated to the

disclosure of the alleged fraud.  *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568

F. Supp. 2d 349, 364 (S.D.N.Y. 2008); *60223 Trust* v. *Goldman, Sachs & Co.*, 540 F. Supp. 2d

449, 461 (S.D.N.Y. 2007).

In their opposition, plaintiffs suggest that, in analyzing loss causation, the Court

should focus on the period following the first recognized corrective disclosure (October 12,

2007) through the last recognized disclosure (October 22, 2008), rather than the period of decline

alleged in the amended complaint (*i.e.*, February 8, 2007 to October 25, 2007).  (*See* Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion for Reconsideration ("Opp.") at 3,

11.)  Moody's agrees—now that the Court has established the date of the first corrective

- 2 -

disclosure (October 12, 2007), the impact of that disclosure and the recognized subsequent disclosures must be analyzed from that date forward.  Plaintiffs note that during the period October 12, 2007 through October 22, 2008, Moody's stock price fell from "$49.40 to $21.61," a drop of "$27.79 – or 56.25%."  (Opp. at 3, 11.)  According to plaintiffs, that 56% decline establishes the requisite negative stock price reaction upon disclosure of the alleged fraud, and thus supports loss causation.  What plaintiffs fail to note, however, is that during the exact same period, McGraw-Hill's stock experienced a virtually identical decline of 56.94% and Moody's peer financial firms, represented by the S&P 500 Financials Index, declined 58.80%.  Thus, focusing on the October 2007 to October 2008 period, as plaintiffs suggest, does not show loss caused by corrective disclosures, but rather an indisputable market-wide downturn.

In short, Moody's stock reached a class period high of $74.84 per share on February 8, 2007, and then went into a period of steady decline, just like the stocks of its direct competitor and market peers.  It is axiomatic that the decline that occurred before October 12, 2007 cannot be related to the "corrective disclosure" of the alleged fraud because the first disclosure did not take place until October 12, 2007.  Although Moody's stock continued to decline after that first corrective disclosure was made, plaintiffs offer no facts showing that the continuing decline from October 2007 to October 2008 resulted from the disclosures rather than the continuation of the severe dislocation affecting the global financial markets generally in the aftermath of the subprime mortgage crisis.  Plaintiffs have therefore failed adequately to plead loss causation.

**ARGUMENT**

I.    **CONSIDERATION OF THE OCTOBER 12, 2007 TO OCTOBER 22, 2008
      PERIOD FIRMLY ESTABLISHES THAT THERE WAS A MARKET-WIDE
      DOWNTURN DURING THE DECLINE IN MOODY'S STOCK PRICE.**

        In its Opinion, the Court found that the alleged fraud was first revealed on

October 12, 2007.  (Opinion at 36-37.)  Such disclosure plainly cannot have caused the decline in

Moody's stock price that started nine months earlier in February 2007.  (*See* CAC ¶ 399

(Moody's stock price fell "from $74.84 per share on February 8, 2007 to $43.33 per share on

October 25, 2007").)  In an attempt to avoid this obvious implication on reconsideration that the

decline must have been caused by something other than purported corrective disclosures,

plaintiffs rejoin that, in fact, "Moody's stock did not lose most of its value prior to October 12,

2007" but that "[f]rom October 12, 2007 to October 22, 2008 . . . the decline was $27.79 – or

56.25%."  (Opp. at 11.)  Plaintiffs argue that, by shifting focus to this period, they can still

establish loss causation.  (Opp. at 11.)  Plaintiffs are wrong.

        Although it is true that from the first recognized corrective disclosure on October

12, 2007 to the last disclosure on October 22, 2008 Moody's stock price declined by **56.25%**

(Opp. at 11), during this exact same period, McGraw-Hill's stock price fell from $52.77 per

share to $22.72 per share, a virtually identical decline of **56.94%**.  (*See* Second Declaration of

Darrell S. Cafasso, dated April 2, 2009 ("Second Cafasso Decl."), Ex. B.)  Further, the S&P 500

Financials Index likewise fell precipitously from 475.86 to 196.02, another virtually identical

drop of **58.80%**.  (*See* Second Cafasso Decl. Ex. C.)[1]  Thus, rather than supporting the

conclusion that corrective disclosures caused the decline in Moody's stock price, consideration

of the October 12, 2007 to October 22, 2008 period confirms that there was a market-wide

downturn at the time the alleged fraud was supposedly revealed to the market.  (*See* Opinion at

37 ("If there was [an industry-wide] downturn, one would expect the stock prices for Moody's

competitors to fall along with that of Moody's.").)

The law is clear:  "'[W]hen the plaintiff's loss coincides with a marketwide

phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss

was caused by the fraud decreases,' and a plaintiff's claim fails when 'it has not adequately

ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements

as opposed to intervening events.'"  *Lentell* v. *Merrill Lynch & Co., Inc*., 396 F.3d 161, 174 (2d

Cir. 2005) (quoting *First Nationwide Bank* v. *Gelt Funding Corp*., 27 F.3d 763, 772 (2d Cir.

1994)).  Here, it cannot be disputed that Moody's direct competitor, as well as the financial

services industry as a whole as represented by the S&P 500 Financials Index, declined in tandem,

and *by nearly the exact same percentage points*, during the period when the alleged fraud was

---

[1]      Indeed, the global markets generally fell dramatically during this period.  The Dow Jones
Industrial Average fell from 14093.08 to 8519.21, a decline of 39.56%, and the NYSE
Composite Index fell from 10301.49 to 5630.47, a decline of 45.34%.  (*See* Second
Cafasso Decl. Exs. D, E.)  Attached as Exhibits A – E to the Second Cafasso Declaration
are historical stock price data for (i) Moody's (ii) McGraw-Hill (iii) the S&P 500
Financials Index (iv) the Dow Jones Industrial Average and (v) the NYSE Composite
Index for the period October 12, 2007 to October 22, 2008.  In support of their motion to
dismiss, defendants provided the Court with similar historical stock price data for
Moody's, McGraw-Hill and the S&P 500 Financials Index for the class period (*i.e*.,
February 3, 2006 to October 24, 2007).  (*See* Cafasso Decl. Exs. B, L, M.)  Defendants
did not previously submit stock price data for the period from October 12, 2007 to
October 22, 2008 because plaintiffs rely on this period for the first time in their
opposition to Moody's motion for reconsideration.  (*See* CAC ¶ 399; Plaintiffs'
Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated
Amended Complaint ("MTD Opp.") at 35-39.)

purportedly disclosed to the market.  Nor can this be surprising.  It was this period that brought the failure of Bear Stearns and Lehman Brothers, the bailout of AIG and the extinction of the investment banks.  It was during this period that the United States economy officially fell into recession, and the credit markets froze and stock markets around the world fell sharply. Plaintiffs allege no facts that would show that the post-disclosure decline in Moody's stock price from "$49.40 to $21.61" (Opp. at 3) was caused by revelation of the alleged fraud rather than the severe downturn affecting McGraw-Hill, the S&P 500 Financials Index and the global markets generally.

Moreover, in light of the Court's finding that the alleged fraud was first revealed on October 12, 2007, plaintiffs cannot distinguish this case from *In re Merrill Lynch & Co.* and *60223 Trust*, which state that plaintiffs cannot adequately plead loss causation where the relevant stock already declined substantially throughout the class period before revelation of the alleged fraud.  *In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 364; *60223 Trust*, 540 F. Supp. 2d at 461. Indeed, the best plaintiffs have to offer is:  (i) "defendants did not proffer this argument in their motion to dismiss" and therefore should be precluded from asserting it now; and (ii) Moody's stock actually lost more value after the close of the class period.  (Opp. at 10.)

Plaintiffs' first argument is specious.  Defendants did not raise this argument in their motion to dismiss because plaintiffs asserted in their complaint that the alleged fraud caused "Moody's stock price [to fall] from $74.84 per share on February 8, 2007 to $43.33 per share on October 25, 2007."  (CAC ¶ 399; *see* MTD Opp. at 35 (Moody's stock declined "from its February 2007 Class Period high of $73.71 to $43.33 on October 24, 2007, the end of the Class Period").)  Once the Court ruled that the corrective disclosures adequately pleaded by plaintiffs occurred during the period from October 12, 2007 to October 22, 2008, defendants promptly

requested the Court to revisit its loss causation analysis in light of *In re Merrill Lynch & Co.* and *60223 Trust*.

Plaintiffs' second argument is meritless.  In fact, both *In re Merrill Lynch & Co.* and *60223 Trust* rejected the same argument.  *In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 364; *60223 Trust*, 540 F. Supp. 2d at 461.  Even if Moody's stock continued to decline following the alleged disclosures, the "essential point" is that Moody's stock fell from its class period high of $74.84 per share to $49.16 per share before the first disclosure of the alleged fraud on October 12, 2007.  *60223 Trust*, 540 F. Supp. 2d at 461.  (*See* Mem. at 5-6; Cafasso Decl. Ex. B.)  Thus, by the time the alleged fraud was supposedly first revealed on October 12, 2007, Moody's stock was already in the midst of a precipitous nine-month decline—a decline that axiomatically could not have been caused by "fraud" revealed for the first time on October 12, 2007—and continued to decline in lockstep with its competitor and peers, along with the global markets generally.  These facts defeat loss causation.  *See In re Merrill Lynch & Co.*, 568 F. Supp. 2d at 364 (loss causation not established where plaintiffs cannot  "explain how the decline of the stock price following the issuance of [the alleged corrective disclosures] was attributable to the alleged fraud, rather than simply a continuation of the loss in value that afflicted [the stock] during the [market-wide] collapse").

## II.   PLAINTIFFS' OTHER ARGUMENTS CONCERNING THE INTERVENING CAUSE OF THE DECLINE IN MOODY'S STOCK PRICE FARE NO BETTER.

Plaintiffs also reassert their claim that the question of whether their losses were caused by an intervening event is a matter for proof at trial and not to be decided on a motion to dismiss.  (*See* Opp. at 6-7; MTD Opp. at 40.)  In its Opinion, however, the Court correctly stated the law regarding the pleading of loss causation in the context of intervening causes of market decline:  "Where there is a market-wide downturn in a particular industry, . . . Plaintiffs must

show that their loss was caused by Defendants' fraud, rather than the intervening events, in order

to survive a motion to dismiss."  (Opinion at 37 (citation omitted).)  That doctrine is well

established in the Second Circuit, and plaintiffs' protestations to the contrary are unavailing.  *See*

*Lentell*, 396 F.3d at 174; *In re AOL Time Warner, Inc. Sec. Litig*., 503 F. Supp. 2d 666, 680

(S.D.N.Y. 2007) (plaintiffs must plead "'facts that would allow a factfinder to ascribe some

rough proportion of the whole loss to [defendants' alleged] misstatements'" (quoting *Lattanzio* v.

*Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007)); *In re Merrill Lynch & Co.*, 568 F.

Supp. 2d at 364-365 (dismissing action where plaintiffs failed to allege facts sufficient to

attribute losses to the alleged fraud as opposed to bursting of Internet bubble).

       Plaintiffs also contend that "dismissal is not warranted where the relevant

'industry' consists of just one other company besides Moody's, namely . . . S&P/McGraw-Hill."

(Opp. at 2.)  Plaintiffs fail to cite any law to support this self-created limitation to the doctrine

requiring plaintiffs to plead facts that would show that the loss was caused by the corrective

disclosures as opposed to the market downturn.  *See Lentell*, 396 F.3d at 174.  Furthermore,

plaintiffs completely ignore the comparative performance of the S&P 500 Financials Index,

which is comprised of Moody's peer financial firms.  As noted above, for the period from

October 12, 2007 to October 22, 2008, which is the relevant period of consideration following

this Court's Opinion, Moody's stock fell 56%, McGraw-Hill's stock also fell 56% and the S&P

500 Financials Index fell 58%.  (*See* Second Cafasso Decl. Exs. A – C.)  This identical decline

among competitors and peers (occurring at a time when the global markets faltered) is an

intervening cause that requires plaintiffs to plead adequately "that their loss was caused by the

Defendants' fraud, rather than the intervening events, in order to survive a motion to dismiss."

(Opinion at 37.)  Because plaintiffs alleged no facts to make such a showing, they have not adequately pleaded loss causation and their complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in defendants' moving brief, defendants respectfully ask the Court to reconsider its conclusion that plaintiffs adequately pleaded loss causation.

Dated: April 2, 2009
        New York, New York

/s/ Sharon L. Nelles
_____
Sharon L. Nelles  (SN-3144)
Stephen Ehrenberg  (SE-3123)
Darrell S. Cafasso  (DC-7123)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 2, 2009, copies of the foregoing Moody's Reply

Memorandum of Law in Support of its Motion for Reconsideration, were served via ECF and

Federal Express, on the following:

| | |
|---|---|
| Ira M. Press | Stuart L. Berman |
| Roger W. Kirby | Michael K. Yarnoff |
| David Bishop | Benjamin J. Hinerfeld |
| Daniel Hume | Jennifer L. Keeney |
| Aaron Hovan | Lauren Wagner Pederson |
| Kirby McInerney LLP | Barroway Topaz Kessler Meltzer & Check, LLP |
| 825 Third Avenue, 13th Floor | 280 King of Prussia Road |
| New York, NY  10022 | Radnor, PA  19087 |

Lionel Z. Glancy
Michael M. Goldberg
Frederick W. Gerkens III
Glancy Binkow & Goldberg LLP
1430 Broadway, Suite 1603
New York, NY  10018

*Co-lead Counsel for Lead Plaintiffs*

/s/ Darrell S. Cafasso
Darrell S. Cafasso (DC-7123)