UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    x
                                    x    07 Cv. 8375 (SWK)
                                    x
In re MOODY'S CORPORATION           x    **OPINION AND ORDER**
SECURITIES LITIGATION               x
                                    x
                                    x
-----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

Moody's Corporation ("Moody's" or "the Company"), Raymond W. McDaniel, Jr., Brian M. Clarkson, and Michael Kanef (collectively, "Defendants") bring two motions before the Court. The first is a motion for reconsideration of the Court's February 23, 2009 Opinion and Order, In re Moody's Corp. Sec. Litig., 599 F. Supp. 2d 493 (S.D.N.Y. 2009) (the "Opinion"), granting in part, and denying in part, Defendants' motion to dismiss the Consolidated Amended Complaint ("AC") submitted by Teamsters Local 282 Pension Trust Fund, Charles W. McCurley, Jr., and Lewis Wetstein (collectively, "Plaintiffs"). Defendants also move to correct a misstatement of fact in the Opinion. For the following reasons, the Court grants the motion to correct the record and denies the motion for reconsideration.

**I.   BACKGROUND**

The Court assumes the parties' familiarity with the facts and issues of the case as detailed in the Opinion. In the instant motion, Defendants contend that the Court's misconstruction of relevant factual information resulted in "erroneous conclusions of law" with respect to its loss-

causation analysis. (Defs.' Mot. 1.) First, Defendants argue that the Court misconstrued stock price data submitted in support of their motion to dismiss. (Defs.' Mot. 2.) Next, Defendants state the Court used an improper time frame when conducting its loss-causation analysis. (See Defs.' Mot. 3-4.) Defendants contend that the corrected facts require the Court to conclude that Plaintiffs' loss causation pleadings are insufficient. (Defs.' Mot. 1.) Alternatively, Defendants claim that the Court overlooked relevant precedent rendering Plaintiffs' loss-causation pleadings inadequate. (See Defs.' Mot. 5-7.) Finally, Defendants ask the Court to correct a misattribution contained in the Opinion.

## II.  DISCUSSION

### A. Legal Standard

A motion for reconsideration under Local Civil Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The standard for granting a motion for reconsideration is "strict" and the decision resides "within the sound discretion of the district court." McNeil-PPC v. Perrigo Co., 05 Cv. 1321 (WHP), 2007 WL 104513, at *1 (S.D.N.Y. Jan. 17, 2007) (internal quotation marks and citation omitted).

As the Court stated in its Opinion, loss causation is

the causal link between a defendant's misconduct and economic harm ultimately suffered by the plaintiffs. . . . A showing of loss causation requires a plaintiff to demonstrate that (1) a misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security, and (2) that the loss was a foreseeable consequence of the misrepresentation or omission.

In re Moody's Corp. Sec. Litig., 599 F. Supp. 2d at 511-12 (internal citations omitted). Plaintiffs must adequately allege, under the pleading standards of Federal Rule of Civil Procedure 8, that the company's misrepresentation was the cause of the economic loss. In re Tower Automotive Sec. Litig., 483 F. Supp. 2d 327, 348-49 (S.D.N.Y. 2007) ("The [Supreme Court in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005)] assumed arguendo that the notice pleading standards of Rule 8 govern the pleading of loss causation, and nearly all courts addressing the issue since have also applied Rule 8, rather than the heightened pleading standard of Rule 9.") (citation omitted). A plaintiff, however, must make a more detailed showing of loss causation when there is evidence of an industry-wide downturn, Lentell v. Merrill Lynch & Co., 396 F.3d 161, 174 (2d Cir. 2005), or when the record indicates that the company's stock lost almost all its value before the first alleged corrective disclosure. 60223 Trust v. Goldman, Sachs & Co., 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007). Defendants argue that both situations arise in this case. The Court disagrees.

**B. Defendants Do Not Provide Evidence Indicating a Downturn in the Ratings Industry**

As the Court stated in its Opinion,

> In cases of an intervening event, the question of causation is reserved for trial and is not subject to analysis in a Rule 12(b)(6) motion to dismiss. Where there is a market-wide downturn in a particular industry, however, Plaintiffs must show that their loss was caused by the Defendants' fraud, rather than the intervening events, in order to survive a motion to dismiss.

In re Moody's Sec. Litig., 599 F. Supp. 2d at 513 (internal citations omitted). The Court explained that in an industry-wide downturn, "one would expect the stock prices for Moody's competitors to fall along with that of Moody's." Id. Using stock prices for the entire class period, the Court concluded that there was no market-wide downturn in the ratings industry because the stock prices for Moody's competitors did not drop commensurate to that of Moody's. Id. at 513-14.

Defendants' instant motion alleges several errors in the Court's analysis. First, Defendants claim that the Court conflated the stock price of one of Moody's competitors with that of another entity. (See Defs.' Mot. 3.) Defendants contend that the data, when viewed in its proper light, requires the Court to conclude that a market-wide downturn, rather than corrective disclosures, caused the drop in Moody's stock price. Defendants also claim that the proper comparison for the stock prices begins "at the time the corrective disclosures" occurred, rather than over the entire class period." (See Defs.' Mot. 3.)

Examining stock prices from the date of the first corrective disclosure reveals that the stock price for Moody's dropped by 38%, while the stock price for McGraw-Hill dropped by 28%. (Defs Mot. 4.) According to Defendants, this figure constitutes evidence of a market-wide downturn in the credit ratings industry. (See Defs.' Mot. 3-4.)

The Court disagrees. Defendants ask the Court to conclude solely on the basis of one data point--the decline of the stock price of McGraw-Hill, the parent company of Standard and Poors-- that there was a downturn in the ratings industry as a whole. Defendants do not, however, support their implicit claim that the decline in McGraw-Hill's share price derives from its ownership of Standard and Poors. To put it another way, the characterization of McGraw-Hill's stock price as a reflection on the industry of one of its subsidiaries is unsubstantiated. McGraw-Hill's stock price could have fallen for a number of reasons wholly unrelated to any problems in the ratings industry. Cf. Dura, 544 U.S. at 343 (noting that a drop in share price "may reflect . . . changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events."). Moody's other primary competitors are both private companies with no published stock price. Lacking a relevant basis for comparison, the Court cannot conclude that there was an industry-wide downturn even "at the

time of the first alleged corrective disclosure," and thus "the question of causation is reserved for trial." <u>In re Moody's Corp. Sec. Litig.</u>, 599 F. Supp. 2d at 513.[1]

### C. Moody's Stock Had Not Lost "Almost All" Its Value Before the First Corrective Disclosure

In the context of pleading loss causation, when corrective disclosures follow a loss of "almost all" of a stock's value, <u>60223 Trust v. Goldman, Sachs & Co.</u>, 540 F. Supp. 2d at 461, plaintiffs must demonstrate that the continued decline in the stock price is "attributable to the alleged fraud, rather than simply a continuation of the loss in value" that preceded the disclosure. <u>In re Merrill Lynch & Co. Research Reports Sec. Litig.</u>, 568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008). Although no court has yet established a minimum threshold, two courts in this District have indicated that a loss of approximately 80% of the stock's value before the first corrective disclosure constitutes a loss "almost all" of its value. <u>See</u> <u>In re Merrill Lynch & Co.</u>, 568 F. Supp. 2d at 365 (holding that a 78% loss is sufficient); <u>60223 Trust</u>, 540 F. Supp. 2d at 461 (concluding that an 79.76% loss is almost all of a stock's value).

---

[1] In their Reply, Defendants also compare Moody's share price to the share price of the S&P Financials Index. (<u>See</u> Defs.' Reply 3-7.) In so doing, Defendants implicitly claim that the firms of the S&P 500 Financials Index represent the Company's peers. (<u>See</u> Defs.' Reply 3.) They do not, however, cite authority indicating why the Court should classify Moody's as a financial firm (rather than a firm that performs financial research for corporate entities), or how financial firms constitute a group of Moody's peers. The Court cannot accept this conclusory and unsubstantiated classification.

In its loss causation analysis, the Court must determine "when, if ever, the [Moody's] stock lost its value, and whether that loss was causally related to the claimed misrepresentation." 60223 Trust, 540 F. Supp. 2d at 460-61. The question becomes: Did the precipitous drop in value of Moody's stock occur before or after the corrective disclosures? Cf. 60223 Trust, 540 F. Supp. 2d at 460.

In answering that question, the 60223 Trust Court essentially compared the stock's value on the first day of the class period with the value on the date of the first corrective disclosure. In order to calculate the amount of pre-disclosure loss ("Pre-CD Loss"). See 60223 Trust, 540 F. Supp. 2d at 466 (using "the first day of the class period"); See In re Merrill Lynch & Co., 568 F. Supp. 2d at 365 (using the "day Defendants initiated coverage," also the first day of the class period).

The calculations in Defendants' current motion do not adhere to this framework. Defendants calculate the loss from the stock's highest value during the class period to the day preceding the first corrective disclosure. (See Defs.' Mot. 6 (arguing that Moody's stock "dropped more than $25 per share from $74.84 on February 8, 2007 (the height of its value during the class period) to $49.16 on October 11, 2007 (the day immediately preceding the first alleged corrective disclosure)," representing a 35% decline in share value.).) A calculation

using the proper dates, however, reveals that Moody's lost $13.92 per share from 62.15 on February 3, 2006[2] (the first day of the class period) to $48.23 on October 11, 2007 (the day immediately preceding the first corrective disclosure).[3] This constitutes only a 22% decline in share value. This loss, while hardly insignificant, is not on the scale of the decline at issue in 60223 Trust and In re Merrill Lynch & Co., and does not constitute "almost all" the stock's value.

Even assuming arguendo that Defendants' methodology is acceptable, their calculated loss is not great enough to warrant an explanation from Plaintiffs. Defendants claim that the loss of a "great portion" of Moody's stock value requires Plaintiffs to "explain how the decline of the stock price following the issuance of the alleged corrective disclosures was attributable to the alleged fraud." (Defs.' Mot. 6-7 (internal quotations and alterations omitted).) Both the 60223 Trust and In re Merrill Lynch & Co. courts, however, concluded that plaintiffs in the respective cases had not shown that the corrective disclosures had caused the drop in share value because the stock in question had lost "almost all" its value prior to the first corrective

---

[2] The Court uses the closing price on the first day of the class period, to be consistent with the methodology employed by 60223 Trust. See 540 F. Supp. 2d at 460.

[3] The Court takes judicial notice of Moody's historical stock prices. Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 n. 8 (2d Cir. 2000). The Court is using stock prices from finance.yahoo.com adjusted for dividends and splits.

disclosure. In re Merrill Lynch & Co., 568 F. Supp. 2d at 365; See 60223 Trust, 540 F. Supp. 2d at 461.

Because the 22% Pre-CD Loss suggests that the majority of the loss suffered by Moody's occurred after the first corrective disclosure, not before, Plaintiff's allegations are not inadequate, and the issue of loss causation is reserved for trial.

**D. Motion for Correction of the Record**

Rule 60(a) permits the Court to correct a "clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Based upon the record, the sentence beginning "Plaintiffs also cite . . . ." at *19 through the sentence beginning "The conversation ends . . . ." should be deleted from the Court's Opinion.

**III. CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion for reconsideration and grants Defendants' motion to correct the record.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          April 29, 2009

disclosure. In re Merrill Lynch & Co., 568 F. Supp. 2d at 365; See 60223 Trust, 540 F. Supp. 2d at 461.

Because the 22% Pre-CD Loss suggests that the majority of the loss suffered by Moody's occurred after the first corrective disclosure, not before, Plaintiff's allegations are not inadequate, and the issue of loss causation is reserved for trial.

### D. Motion for Correction of the Record

Rule 60(a) permits the Court to correct a "clerical mistake or mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Based upon the record, the sentence beginning "Plaintiffs also cite . . . ." at *19 through the sentence beginning "The conversation ends . . . ." should be deleted from the Court's Opinion.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for reconsideration and grants Defendants' motion to correct the record.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          April 29, 2009

9