UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re MOODY'S CORPORATION
SECURITIES LITIGATION

CASE NO. 1:07-CV-8375-GBD

## LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**(PORTIONS OF THIS DOCUMENT HAVE BEEN REDACTED AND FILED UNDER SEAL PURSUANT TO THE CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER ENTERED BY THE COURT ON MARCH 15, 2010)**

KIRBY McINERNEY LLP
Ira M. Press
Daniel Hume
825 Third Avenue, 16th floor
New York, New York 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Michael K. Yarnoff
Lauren Wagner Pederson
Neena Verma
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Co-lead Counsel for Lead Plaintiffs*

LABATON SUCHAROW LLP
Christopher Keller
Jonathan Gardner
Serena Hallowell
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Counsel for Plaintiffs*

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Peter A. Binkow
Andy Sohrn
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.   THERE IS NO EVIDENCE OF WIDESPREAD KNOWLEDGE OF
     DEFENDANTS' FRAUD .................................................................................. 2

II.  PLAINTIFFS HAVE ESTABLISHED MATERIALITY ...................................... 6

III. LOSS CAUSATION NEED NOT BE PROVEN AT THE CLASS
     CERTIFICATION STAGE ................................................................................ 10

IV.  LEAD PLAINTIFFS ARE PROPER CLASS REPRESENTATIVES ................. 13

     A.   Local 282 Has Section 10(b) Standing ........................................................ 13

     B.   Dr. Wetstein's Post-Disclosure Purchases Were Typical Purchases, Made in
          Reliance on the Integrity of the Market ...................................................... 14

     C.   Local 282 and McCurley Suffered Cognizable Losses and Are Proper
          Plaintiffs and Class Representatives ........................................................... 15

CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

<u>*Cases*</u>

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    ---F.R.D.---, 2010 WL 2593948 (S.D.N.Y. June 15, 2010) ................................................5

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ..........................................................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ...............................................................................................13

*Basic v. Levinson*,
    485 U.S. 224 (1988) ....................................................................................................*passim*

*Bertoni v. Campion*,
    No. 06-cv-10215, 2008 WL 3912851 (E.D. Mich. Aug. 19, 2008) ....................................5

*Berwecky v. Bear, Stearns & Co.*,
    197 F.R.D. 65 (S.D.N.Y. 2000)........................................................................................14

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series
    ARI*,
    ---F. Supp. 2d ---, 2010 WL 3815796 (W.D. Wash. Sept. 28, 2010) .................................7

*Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc.*,
    800 F.2d 177 (7th Cir. 1986) ...........................................................................................13

*Cooper v. Pacific Life Ins. Co.*,
    458 F. Supp. 2d 1368 (S.D. Ga. 2006) ...............................................................................4

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ...............................................................................................14

*Cox v. Eichler*,
    765 F. Supp. 601 (N.D. Cal. 1990)...................................................................................13

*Danis v. USN Commc'ns, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999) .........................................................................................4

*DeMarco v. Lehman Bros. Inc.*,
    309 F. Supp. 2d 631 (S.D.N.Y. 2004) ................................................................................5

*Fogarazzo v. Lehman Bros., Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009)......................................................................................8, 10

*Frigitemp Corp. v. Financial Dynamics Fund, Inc.*,
    524 F.2d 275 (2d Cir. 1975) ...............................................................................................5

*Hnot v. Willis Group Holdings Ltd.*,
     241 F.R.D. 204 (S.D.N.Y. 2007) ...................................................................11

*In re Am. Int'l Group, Inc. Sec. Litig.*,
     265 F.R.D. 157 (S.D.N.Y. 2010) ....................................................................9

*In re Am. Int'l Group, Inc.2008 Sec. Litig.*,
     No. 08 Civ. 4772, 2010 WL 3768146 (S.D.N.Y. Sept. 27, 2010).....................12

*In re Bard Assocs., Inc.*,
     No. 09-6243, 2009 WL 4350780 (10th Cir. Dec. 2, 2009) ..............................14

*In re DVI, Inc. Sec. Litig.*,
     No. 2:03-cv-05336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) ...............10, 11

*In re Flag Telecom Holdings Sec. Litig.*,
     574 F.3d 29 (2d Cir. 2009) ............................................................................1

*In re Herley Indus. Inc. Sec. Litig.*,
     No. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009).......................13, 14

*In re IndyMac Mortgage-Backed Sec. Litig.*,
     ---F. Supp. 2d ---, 2010 WL 2473243 (S.D.N.Y. June 21, 2010)......................7

*In re Initial Public Offerings Sec. Litig.*,
     471 F.3d 24 (2d. Cir. 2006) .......................................................................2, 5

*In re Lehman Bros. Sec. & Erisa Litig.*,
     684 F. Supp. 2d 485 (S.D.N.Y. 2010) ........................................................6, 7

*In re Sadia, S.A. Sec. Litig.*,
     --- F.R.D. ---, 2010 WL 2884737 (S.D.N.Y. July 20, 2010) ..............6, 7, 9, 10

*In re Salomon Analyst Metromedia Litig.*,
     544 F.3d 474 (2d Cir. 2008) ......................................................................6, 7

*In re Sanofi-Aventis Sec. Litig.*,
     No. 07-cv-10279, 2009 WL 3094957 (S.D.N.Y. Sept. 25, 2009)......................6

*In re SLM Corp. Sec. Litig.*,
     258 F.R.D. 112 (S.D.N.Y. 2009)...................................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
     634 F. Supp. 2d 352 (S.D.N.Y. 2009) ..........................................................12

*Lapin v. Goldman Sachs & Co.*,
     254 F.R.D. 168 (S.D.N.Y. 2008)........................................................1, 10, 11

*Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*
[967 F.2d 742 (2d Cir. 1992)]............................................................................7

*Marsden v. Select Medical Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007) ....................................................................3

*Marshall v. H&R Block Tax Servs. Inc.*,
--- F.R.D. ---, 2010 WL 3734072 (S.D. Ill. Sept. 17, 2010)............................15

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) ........................................................................14

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group*,
--- F. Supp. 2d ---, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ....................7

*Nathenson v. Zonagen, Inc.*,
267 F.3d 400 (5th Cir. 2001) ..........................................................................8

*Peil v. Nat'l Semiconductor Corp.*,
86 F.R.D. 357 (E.D. Pa. 1980) ......................................................................4

*Police and Fire Retirement Sys. of City of Detroit v. Safenet, Inc.*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009) ............................................................13

*Rocco v. Nam Tai Electronics, Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007).....................................................................14

*Rosen v. Textron Inc.*,
369 F. Supp. 2d 204 (D.R.I. 2005) ..................................................................14

*Starr v. Georgeson Shareholder, Inc.*
[412 F.3d 103 (2d Cir. 2005)]..........................................................................8

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010) ............................................................................5

*W.R. Huff Asset Mgmt Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) ..........................................................................13

*Wagner v. Barrick Gold Corp.*,
251 F.R.D. 112 (S.D.N.Y. 2008)......................................................................14

**INTRODUCTION**

Defendants' Sur-Reply largely rehashes arguments raised previously in their opposition brief and to which plaintiffs previously responded in their reply.[1]  Importantly, defendants do not and cannot dispute that Moody's (a New York Stock Exchange-listed company) traded on an efficient market.  The "New York Stock Exchange [is] a classic efficient market." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 182 (S.D.N.Y. 2008) (citing *Basic v. Levinson*, 485 U.S. 224, 249 n.29 (1998) ("*Basic*")).  Moreover, defendants still proffer no evidence of widespread investor knowledge of the alleged fraud, and the chain of conjecture they proffer about "possible" investor suspicion does not suffice to defeat class certification.  Nor can defendants' arguments change the fact that Moody's itself publicly claimed the materiality of its independence.

The challenges to plaintiffs' ability to demonstrate loss causation fail for two reasons.  First, controlling precedent makes clear that plaintiffs need not demonstrate loss causation at the class certification stage. *See In re Flag Telecom Holdings Sec. Litig.*, 574 F.3d 29, 39 (2d Cir. 2009).  Second, plaintiffs have, in any event, demonstrated that they will be able to show loss causation at the appropriate stage.  Finally, defendants rehash challenges to the named plaintiffs that have all been rejected time and again by multiple courts.  It would contravene the PSLRA to

---

[1]     Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Reply Memorandum of Law in Support of Lead Plaintiffs' Motion for Class Certification (Dkt. No. 75) ("Pltfs. Reply").  References made herein include: "Sur-Reply" (Defendants' October 22, 2010 Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 84)); "Coffman Reply Rpt." (Expert Reply Report of Chad Coffman dated November 5, 2010, attached as Exhibit 1 to the Declaration of Daniel Hume ("Hume Decl."), filed concurrently herewith); "Coffman Tr." (Transcript of October 7, 2010 deposition of Chad Coffman, attached as Exhibit 2 to the Hume Decl.); and "Stulz Reply Rpt." (October 22, 2010 Expert Reply Report of René Stulz attached as Exhibit 1 to the Sur-Reply Declaration of Stephen Ehrenberg (Dkt. No. 85)).

disqualify a pension fund simply because it, like virtually all pension funds, employs investment advisors. Courts clearly hold that representatives are not disabled by virtue of sales prior to some (but not all) of the alleged corrective disclosures, or for that matter, additional purchases following the disclosures (and the corresponding stock price declines).

In short, plaintiffs claim that the efficiently-traded stock of Moody's was artificially inflated as a result of misleading public statements. Plaintiffs' success or failure in proving material misrepresentations, defendants' scienter, and stock price declines in response to corrective disclosures will necessarily compel a similar result for the claims of all class members. As such, this is a textbook case for class certification.

## ARGUMENT

## I.    THERE IS NO EVIDENCE OF WIDESPREAD KNOWLEDGE OF DEFENDANTS' FRAUD

Defendants offer no evidence of public knowledge of Moody's misconduct, let alone the "widespread" public knowledge required to rebut the *Basic* presumption. *But cf. In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006) ("*IPO*").

Defendants continue to point to various media, Congressional and regulatory reports. Sur-Reply at 3-4 (citing Ehrenberg Exs. 25, 28, 33, 34, 35, 36, 40). As previously noted (*see* Pltfs. Reply at 12-13; Coffman Rpt. ¶¶ 56, 58, 63), these materials do not present any evidence of widespread knowledge that Moody's had succumbed to conflicts or knowingly provided inflated ratings for any specific security. Instead, they contain rating agencies' reassuring explanations of the safeguards instituted to defuse potential conflicts.[2]

---

[2]    *See, e.g.,* Ehrenberg Ex. 25 at p. 1 ("The agencies insist [that]...[t]heir businesses stand or fall on their reputation for independence, and they would never risk that."); Ex. 28 at p. 1 ("Borrowers said the [rating] agencies'...fee structures *could* cause conflicts of interest")
*(continued...)*

Defendants' expert, Dr. Stulz, speculates that the public had access to enough information about Moody's CDO ratings (including, presumably, the thousands of mortgages underlying each CDO) to have determined that the ratings were inflated. *See* Stulz Report at ¶¶ 26-27. Such a scenario would have been impossible. Coffman Rpt. ¶¶ 70-77; Coffman Reply Rpt. ¶ 10. Moreover, even if sophisticated investors had the *theoretical* ability to pore through voluminous data on millions of mortgages and Moody's assumptions regarding the same and conclude that the ratings were inflated, the mere speculation that *some* investors *could have* done that, absent any evidence that any *actually* did, does not evidence widespread investor knowledge of the fraud. *See* Pltfs. Reply at 16-18.

Failing to present any evidence of "knowledge" of the misconduct, defendants resort to compound layers of speculation. Thus, they argue that "it was possible" that investors "could have" believed (even absent knowledge) that Moody's succumbed to conflicts, or that the fraud "would have" been known by certain people who "would have" spread this knowledge. Sur-Reply at 4. Class certification, however, cannot be defeated simply based on speculation that *some* class members *might* have some knowledge of the fraud. *See Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 489 (E.D. Pa. 2007): "Even if some individual investors did 'know' or have a premonition about the coming [regulatory] changes," class certification would not be defeated. "*Creating a standard that would allow us to hold otherwise would make it virtually*

---

(emphasis added); Ex. 33 (article criticizing Standard & Poor's – not Moody's – for inflated ratings); Ex. 34 at p. 2 (discussion of "*potential*" conflict); Ex. 35 at 1 (discussing rating agency denials of conflicts); Ex. 36 at p. 1 (same); and Ex. 40 at 1 (same).

3

*impossible to ever certify a class in a section 10(b) suit, a result clearly at odds with case law and the PSLRA." Id.* at 489 (emphasis added).[3]

Typical of defendants' multi-layered conjecture is the argument that issuers of structured finance "necessarily would have participated in, or at least had knowledge of, the alleged fraud", and imparted that knowledge to others who in turn, traded on it in large enough volume to impact market prices. Sur-Reply at 3, 6. The logical leaps required to support this argument are untenable. There is no evidence that: (1) structured finance issuers knew of the fraud alleged in the CAC, *see, e.g.,* Pltfs. Reply at 10, n.9 (for description of the fraud itself); (2) these issuers traded large amounts of Moody's stock during the class period; or (3) employees of the issuers that traded any Moody's stock were ever informed of the fraud by co-workers who knew of the fraud (assuming *arguendo* any co-workers knew).[4] Even assuming *arguendo* that there was evidentiary support for all of the aforementioned speculation, there is no basis to conclude that

---

[3]   *Accord Cooper v. Pacific Life Ins. Co.*, 458 F. Supp. 2d 1368, 1377 (S.D. Ga. 2006) (defendant's "arguments [that reliance required individualized issues], while worthy of consideration, would be better made if it had presented actual evidence that would require a multitude of inquiries at trial. Here, the mere incantation of such a possibility, based on speculative proof, or conceivable defenses, is insufficient to decertify the class."). *See also Peil v. Nat'l Semiconductor Corp.*, 86 F.R.D. 357, 373 (E.D. Pa. 1980) ("speculative possibility that the defendants may have a right to show nonreliance for each class member and that they may wish to exercise this right is not enough to defeat a class action.") (citation omitted); *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 398 (N.D. Ill. 1999) ("defendants point to nothing in the record indicating [proposed class representative's] broker had access to and acted upon 'insider' information. Pure speculation will not defeat [class certification]").

[4]   Amazingly, defendants accuse plaintiffs of speculation for pointing out the conjecture inherent in defendants' argument that issuers "must have known" about this misconduct, and "must have" shared that knowledge with people who "must have" traded on the knowledge in sufficient quantity to have moved Moody's market price. *See* Sur-Reply at 6.

4

any trading in Moody's stock by structured finance issuers in the know was widespread enough to have altered Moody's market price. *See* Coffman Reply Rpt. ¶¶ 7-10, 49, 53-54.[5]

Defendants once again attempt to invoke *IPO* (Sur-Reply at 6). For reasons previously articulated, the facts of this action are materially different from *IPO*. *See* Pltfs. Reply at 9-10, 18. The pleading in *IPO* specifically *acknowledged* that many class members knowingly participated in, and therefore were actually aware of, defendants' fraudulent conduct. *See IPO*, 471 F.3d at 43-44. Here, there is no plaintiff admission, nor any other admissible evidence of widespread knowledge of the fraud.[6] Media statements that generally *speculated* about a *potential* for conflicts are not tantamount to actual awareness of the misconduct. *See, e.g., DeMarco v. Lehman Bros. Inc.*, 309 F. Supp. 2d 631, 636 (S.D.N.Y. 2004) (media reports "on some generalized conflicts between investment banking and research departments in a variety of investment banks is not equivalent to market awareness of [defendants'] misrepresentations").[7]

---

[5]    Another example of defendants' flawed logic is the suggestion that plaintiffs have admitted to knowledge of the fraud by arguing that the unreasonableness of the ratings constitutes evidence that they were the product of fraud. *See* Sur-Reply at 4. The mere fact that plaintiffs now know how unreasonable the ratings were given what Moody's knew at the time is no indication that the public knew that then. *See* Coffman Reply Rpt. at ¶¶ 12, n.10, 13, 56-58. If nobody believed that the ratings were accurate, they would have been meaningless as defendants themselves have repeatedly admitted. *See, e.g.,* Ehrenberg Ex. 25 (quoted at n.2 *supra*).

[6]    Many of these documents contain "double hearsay" and even "triple hearsay." That is, the author of the document reports statements made to him or her by another person. *See, e.g.,* Ehrenberg Exs. 20, 21, 23, 28, 35, 36, 40. Defendants' hearsay exception (Sur-Reply at 4 n.2) only addresses one level of hearsay. *See Bertoni v. Campion,* No. 06-cv-10215, 2008 WL 3912851, at *2 (E.D. Mich. Aug. 19, 2008) ("Where there is hearsay within hearsay, or double hearsay, each separate level of hearsay must fall within an exception to the hearsay rule.").

[7]    Defendants' reliance on new authorities (Sur-Reply at 5) is misplaced. *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010), a RICO case, did not involve 10(b) or the *Basic* reliance presumption. Nor did *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, ---F.R.D.---, 2010 WL 2593948 (S.D.N.Y. June 15, 2010), an action that asserted state law claims only. Even further off the mark is *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275 (2d Cir. 1975). *Frigitemp* is not a class action, and it pre-dates *Basic* by more than
*(continued...)*

## II.   PLAINTIFFS HAVE ESTABLISHED MATERIALITY

Defendants challenge materiality on the grounds that (a) the fraud was widely known, and therefore could not be material, and (b) Moody's stock price reactions confirm immateriality (Sur-Reply at 8-11). These challenges must fail.

Materiality is confirmed by Moody's own public statements. *See* Pltfs. Reply at 5-6.[8]   In light of those statements, defendants cannot reasonably argue that their omissions regarding Moody's *lack* of independence and inability to manage its potential conflicts had no significant impact on "the probable future of the company and… the desire of investors to buy, sell, or hold [Moody's] securities." *In re Sadia, S.A. Sec. Litig.*, --- F.R.D. ---, 2010 WL 2884737, at *7 (S.D.N.Y. July 20, 2010).

For the reasons set forth above and previously, defendants have not demonstrated widespread investor knowledge of the fraud, so such knowledge cannot demonstrate immateriality.   Defendants continue to misleadingly conflate the market's knowledge of *potential* conflicts at ratings agencies with *actual* knowledge of conflicts that in fact compromised Moody's integrity, and rely on cases that are inapposite.   For example, *In re Lehman Bros. Sec. & Erisa Litig.*, 684 F. Supp. 2d 485, 492 (S.D.N.Y. 2010) (Sur-Reply at 8) is

---

a decade.   There, a corporation alleged fraud against purchasers of its stock based on the purchasers' alleged failure to disclose the amount of stock they held and their intent to purchase most of the stock issued in a certain offering.   The court found that the purchasers had no duty to disclose their holdings because that information was available in plaintiffs' own records, and was therefore "peculiarly within [plaintiffs'] knowledge." *Id.* at 282.   In stark contrast here, there is no evidence that plaintiffs had any knowledge of the specific fraud alleged in the CAC, let alone that such information was "peculiarly within [their] knowledge."

[8]      While defendants cite to *In re Sanofi-Aventis Sec. Litig.*, No. 07-cv-10279, 2009 WL 3094957, at *5 (S.D.N.Y. Sept. 25, 2009), for the proposition that defendants' own admissions cannot evidence materiality (*see* Sur-Reply at 8), this Court held nothing of the sort.   Plaintiffs there did not rely on defendants' proclamations of materiality.   Moreover, defendants' arguments fly in the face of authority. *See* Pltfs. Reply at 6, quoting, *inter alia, In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 485 (2d Cir. 2008).

a mortgage-backed securities case in which the plaintiffs did not own stock in a ratings agency.

The *Lehman* court simply held that:

> [T]here was no obligation for [defendants] to disclose *the potential* for a conflict of interest arising from the fact that Lehman paid the rating agencies for their ratings. The Securities Act does not require disclosure of that which is publicly known, and *the risk* that the rating agencies operated under a conflict of interest because they were paid by the issuers had been known publicly for years….[And a] reasonable investor would have known that the ratings agencies were paid by the issuers.[9]

684 F. Supp. 2d at 492-93 (emphasis added).

Defendants' arguments of immateriality based on plaintiffs' purported failure to demonstrate stock price reaction are contrary to applicable law, which makes clear that "plaintiffs do not bear the burden of showing an impact on [the stock] price at the class certification stage." Pltfs. Reply at 4-5, quoting *In re Salomon*, 544 F.3d at 483. As recently noted in *In re Sadia*, in response to a similar argument:

> Sadia's position conflicts with well-established law. In *In re Salomon Analyst Metromedia Litigation*…Defendants argued "that the district court erred by not placing the burden on plaintiffs to prove that the alleged misrepresentations 'moved the market,' *i.e.*, had a measurable effect on the stock price." The Second Circuit unequivocally stated that defendants' position was "a misreading of *Basic*."…
>
> The Second Circuit then reaffirmed its decision in *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.* [967 F.2d 742 (2d Cir. 1992)], noting that "[t]o saddle a plaintiff with proving the generally indeterminable fact of what would have happened but for the omission [or the misrepresentations that skewed the

---

[9]    Similarly, *In re IndyMac Mortgage-Backed Sec. Litig.*, ---F. Supp. 2d ---, 2010 WL 2473243 (S.D.N.Y. June 21, 2010), *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series AR1*, ---F. Supp. 2d ---, 2010 WL 3815796 (W.D. Wash. Sept. 28, 2010) and *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group*, --- F. Supp. 2d ---, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) (Sur-Reply at 8-9), are also mortgage backed securities cases, decided at the motion to dismiss stage, where the plaintiffs were not investors in the ratings agency. Moreover, the courts make clear that it was "the *risk* that the ratings agencies operated under a conflict of interest because they were paid by the issuers that had been known publicly for years," *IndyMac*, 2010 WL 2473243, at *12; *WaMu*, 2010 WL 3815796, at *7, not that the rating agencies allowed actual conflicts to impinge its integrity and independence.

market value of stock] would reduce the protection against fraud afforded by Section 10(b). The reliance presumption…reallocates the risks of mistaken adjudications, resolving questions of doubt in favor of the investors that section 10(b) seeks to protect." *Thus, plaintiffs do not bear the burden of showing an impact on price.*

2010 WL 2884737, at *10 (emphasis in original).

Here, even though plaintiffs are not required to submit evidence of a price impact, Mr. Coffman demonstrates there were significant declines in Moody's stock price following a series of public disclosures of the materialization of previously concealed risks. Coffman Rpt. ¶¶ 86-91; Coffman Reply Rpt. ¶¶ 16, 66-72. Indeed, defendants' own expert found a statistically significant decline in Moody's stock price on at least two of the disclosure dates identified by plaintiffs. Stulz Report, Ex. 6; Stulz Reply at ¶ 46 (acknowledging that August 20, 2007 and May 21, 2008 have statistically significant abnormal returns).

Defendants misuse Mr. Coffman's market efficiency event study[10] to argue that "[t]he

---

[10]    Defendants argue that because Mr. Coffman's study (which was designed to show market efficiency and not materiality, and accordingly does not analyze relevant post-class period disclosure dates) does not appear to show a price reaction to misstatements, it is evidence of immateriality. *First*, defendants ignore that this is primarily an omissions case, not a misstatements case, as they have acknowledged elsewhere. *See* Sur-Reply at n.5 ("This case involves 'primarily' omissions as opposed to misrepresentations."); *see also Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 106 (S.D.N.Y. 2009) (*Starr v. Georgeson Shareholder, Inc.* [412 F.3d 103 (2d Cir. 2005)] does not apply to "claims based on the omissions themselves."). *Second*, for reasons noted previously, (*see* Pltfs. Reply at 4-5), absence of price reaction to confirmatory or expected misrepresentations does not evidence immateriality. The "special circumstances" distinction defendants attempt to make (Sur-Reply at 10) is erroneous. As defendants admit, in *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 418-19 (5th Cir. 2001) "special circumstances" refers to the situation where omissions fail to impact stock price because they reinforce the market's current expectations. That is exactly the situation here – the market expected Moody's to preserve its independence (a cornerstone of its business), which perception Moody's was able to perpetuate by failing to inform the market that it had failed to manage its *actual* conflicts. Defendants' argument that "[n]o such special circumstances" were present because "[r]egulators, journalists, and investors all questioned whether Moody's was effectively managing conflicts," Sur-Reply at 10, is beside the point – the market knew of Moody's *potential* conflicts, which was reflected in the market "*question[ing]* whether Moody's was

(continued...)

8

absence of a 'price decline in [the] stock on the date a misrepresentation was disclosed' is 'strong

evidence that there was no price change on the date of the misrepresentation, thus rebutting the

fraud-on-the-market presumption.'" Sur-Reply at 10, quoting *In re Am. Int'l Group, Inc. Sec.*

*Litig.*, 265 F.R.D. 157, 182 (S.D.N.Y. 2010). Defendants' misleading quotation, however, omits

the *AIG* court's emphasis that "to the extent **a Defendant** *can show that there was no price*

*decrease* in AIG stock on the date a misrepresentation was disclosed, the Court views this

showing as strong evidence that there was no price change on the date of the misrepresentation,

thus rebutting the fraud-on-the-market presumption." 265 F.R.D. at 182 (emphasis added).

Defendants may not meet their burden by using an event study by *plaintiffs'* expert – which they

admit was designed only to show efficiency, not materiality (Sur-Reply at 9) – as supposed

evidence (under the preponderance standard) of a lack of price impact, especially when the event

study by *defendants'* own expert[11] shows a statistically significant negative drop in stock price

on at least two of the identified disclosure dates. Coffman Rpt. ¶¶ 88-89; Stulz Report, Ex. 6;

Stulz Reply Rpt. at ¶ 46 (acknowledging that Moody's stock price experienced statistically

significant abnormal returns on August 20, 2007 and May 21, 2008). Defendants' misuse of Mr.

Coffman's market efficiency event study is an impermissible attempt to shift their evidentiary

burden back to plaintiffs, even though "*plaintiffs do not bear the burden of showing an impact on*

*price.*" *In re Sadia*, 2010 WL 2884737, at *10 (emphasis in original).

    Further, that Mr. Coffman's event study was not designed for materiality purposes also

undermines defendants' attempted use of it, because Mr. Coffman would have used different

---

effectively managing" them (*id.* (emphasis added)) – what the market did not know, however,
was that Moody's had *actually* failed to manage its conflicts.
[11]    Mr. Stulz was also the defendants' expert in *In re Sadia*, where Judge Scheindlin refused
to accept his "unsubstantiated hypothesis" in finding that the defendant failed to meet its burden
of demonstrating a lack of price impact. 2010 WL 2884737, at *11-12.

methodology to demonstrate price impact. *See* Coffman Tr. 243-246; Coffman Reply Rpt. ¶ 19; *see also Fogarazzo*, 263 F.R.D. at 102-106 (discussing different approaches to event studies on materiality, including the use of different "windows" surrounding each disclosure date, and holding that defendants' expert had failed to rebut plaintiffs' evidence).

Accordingly, defendants fail to rebut the fraud-on-the-market and *Affiliated Ute* presumptions "for lack of evidentiary support." *In re Sadia*, 2010 WL 2884737, at *11. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 154 (1972).

## III.   LOSS CAUSATION NEED NOT BE PROVEN AT THE CLASS CERTIFICATION STAGE

Plaintiffs are not required to prove loss causation at the class certification stage. Plaintiffs need only demonstrate that they will, at the appropriate time, be able to demonstrate class-wide proof of loss causation. *See Lapin*, 254 F.R.D. at 186.

Here, there are no legitimate factual disputes regarding plaintiffs' ability to demonstrate loss causation on a class-wide basis. Plaintiffs will prove loss causation through an event study provided by an expert, (*see* Pltfs. Reply at 23-24; Coffman Tr. 250:7-11; Coffman Reply Rpt. ¶¶ 4, 16, 66, 73, which will show that class losses are attributable to Moody's material misrepresentations and omissions. *See* Coffman Rpt. ¶ 94; Coffman Tr. 162-165; Coffman Reply Rpt. ¶¶ 61, 67-69, 73. Nothing further is required at this stage of the litigation. *See Fogarazzo*, 263 F.R.D. at 106-07 ("proposing a suitable methodology" is sufficient to demonstrate that loss causation may be proven class-wide); *see also Lapin*, 254 F.R.D. at 186 (an expert report is sufficient to propose a suitable methodology for showing class-wide loss causation). In fact, defendants do not dispute that an event study can be used to compute class-wide damages. Moody's mischaracterizes *In re DVI, Inc. Sec. Litig.*, No. 2:03-cv-05336, 2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) and argues that Mr. Coffman's event study methodology

was rejected there. *See* Sur-Reply at 11-12. To the contrary, the *DVI* court accepted Mr. Coffman as a qualified expert and held that his event study methodology was: widely accepted; reliable; and admissible. *See In re DVI*, 2010 WL 3522090, at n.15, *13-14 n.24.[12]

Moreover, defendants fail to acknowledge that the *DVI* court reviewed Mr. Coffman's methodology in a ***summary judgment*** proceeding, not at the class certification stage. *See id.* at *7. Even on summary judgment, the *DVI* court refused to engage in the proverbial "battle of the experts" concerning causation and damages. *Id.* at *7 & n.24. *See also Lapin*, 254 F.R.D. at 186 ("a 'battle of the experts' is not appropriate at the class certification stage, as the relevant question is only whether Plaintiff's expert's methodology will apply to the entire class"); *Hnot v. Willis Group Holdings Ltd.*, 241 F.R.D. 204, 210 (S.D.N.Y. 2007) ("by asking the Court to decide which expert report is more credible, defendants are requesting that the Court look beyond the Rule 23 requirements and decide the issue on the merits, a practice *In re IPO* specifically cautions against.").

In addition to being improper at this stage of the litigation, defendants' remaining challenges to loss causation also lack merit. Defendants rehash the argument that because the May 2008 article was post-class period and "had nothing to do with conflicts of interest", it cannot constitute a corrective disclosure. *See* Def. Br. at 35-36; Sur-Reply at 11. For reasons previously articulated, defendants' argument fails. *See* Pltfs. Reply at 25-28; *see also* Coffman Tr. 153:6-23 ("Part of the news related to what happened with the CPDOs is that when

---

[12]    Defendants' statement that the *DVI* court excluded Mr. Coffman's "loss causation opinions", (Sur-Reply at 11), is misleading. In fact, the court held: "With respect to the event study theories, this Court finds that ...Mr. Coffman['s] ... methodologies are reliable." *See In re DVI*, 2010 WL 3522090, at *7. In *DVI*, in addition to an event study approach, Mr. Coffman submitted an insolvency approach to address the unique position of DVI as an insolvent company as a result of fraud. *Id.* The court found that the insolvency theory did not support liability in *DVI*. *Id.* at *10-11.

confronted with these errors Moody's failed to immediately update the rating and I think one could make the argument that conflict-of-interest issues were related to that decision-making.").

Defendants also argue that Moody's October 2007 announcement of lower earnings "could not constitute" a corrective disclosure because the announcement "said nothing about conflicts of interest or loan originator standards." Sur-Reply at 12. This is wrong. A disclosure need not "mirror" or correspond "fact-for-fact" with the misrepresentation in order to support loss causation. Loss causation can be based upon a materialization of a concealed risk. *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2009) (analyst's downgrade may constitute the materialization of a concealed risk); *In re Am. Int'l Group, Inc. 2008 Sec. Litig.*, --- F. Supp. 2d ---, 2010 WL 3768146, at *18 (S.D.N.Y. Sept. 27, 2010) ("many of the principal risks concealed by AIG and the Section 10(b) Defendants' material misstatements and omissions-such as the threat posed to the Company's liquidity by the CDS portfolio's collateral risk-subsequently materialized to Plaintiffs' detriment"). Here, Moody's generated substantially lower structured finance revenues as the market began to lose confidence in those ratings. *See* Coffman Reply Rpt. ¶ 69 ("The decline of revenue, profits and subsequent loss in market value could represent a foreseeable consequence of Moody's sacrificing its independence, integrity and rating quality, and a materialization of the risk they took by making the misstatements and omissions that Plaintiffs allege."). This is clearly a materialization of a concealed risk. Further, public announcements of government investigation of misratings at Moody's also constitute the materialization of a concealed risk related to Moody's independence. *See* Coffman Reply Rpt. ¶ 67 (discussing August 13, 2007 news article regarding regulators' investigation of rating agencies after it became known that the highest credit ratings were given to very risky structured finance products). This is sufficient for loss causation purposes. *See*

*Police and Fire Retirement Sys. of City of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 230-31
(S.D.N.Y. 2009).

## IV.   LEAD PLAINTIFFS ARE PROPER CLASS REPRESENTATIVES[13]

### A.   Local 282 Has Section 10(b) Standing

Use of an investment manager does not negate 10(b) standing or otherwise render a

plaintiff unfit to be a class representative.  Defendants, in asserting otherwise, regurgitate their

misplaced reliance on *Congregation of the Passion, Holy Cross Province v. Kidder Peabody &*

*Co., Inc.*, 800 F.2d 177 (7th Cir. 1986).  However, *Congregation* conflicts with controlling

Second Circuit law, *W.R. Huff Asset Mgmt Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100,

110-11 (2d Cir. 2008), which holds that the beneficial owner of stock, not the investment advisor

has standing to bring a securities fraud lawsuit.  Pltfs. Reply at 31.  Even the cases cited by

defendants are in accord.  *E.g. In re Herley Indus. Inc. Sec. Litig.*, No. 06-2596, 2009 WL

3169888, at *5 (E.D. Pa. Sept. 30, 2009).[14]

Defendants argue that in light of *Huff*, *if* Local 282 *were to* validly assign its claims to its

investment manager, the investment manager *could* have standing.  However, there is no

---

[13]     While parroting in their Sur-Reply the same arguments from their Opposition that
plaintiffs are arguably subject to "unique defenses," defendants fail to contest that these
purported "unique defenses" pose no threat to become the focus of litigation and, as such, class
certification here is proper.  *See, e.g.*, Pltfs. Reply at 31 n.30 (citing, *inter alia, Baffa v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000)).

[14]     Even if *Congregation* were not in conflict with controlling Second Circuit authority, it
would not compel denial of certification here.  Unlike the plaintiff in *Congregation*, Local 282
retained sufficient investment authority to have Section 10(b) standing.  *See* Pltfs. Reply at 30-31
& n.28.  Unlike the investment manager in *Congregation*, Local 282's investment manager did
not have "full discretion *to develop and implement a prudent portfolio strategy*."  *Congregation*,
800 F.2d at 181 (emphasis added).  In fact, this case is on all fours with *Cox v. Eichler*, 765 F.
Supp. 601 (N.D. Cal. 1990), which rejected the application of Congregation because the plaintiff,
not its investment manager, "set forth specific guidelines and gave express instructions on the
permissible scope of investments."  *Id.* at 608 n.3.

suggestion that Local 282 made such an assumption.   Thus, defendants' speculation is irrelevant.[15]

**B.      Dr. Wetstein's Post-Disclosure Purchases Were Typical Purchases, Made in Reliance on the Integrity of the Market**

Dr. Wetstein, in connection with his Class Period Moody's stock purchases, relied on the integrity of the market. Pltfs. Reply at 31-33.  While defendants argue again that Dr. Wetstein's investments were ███████████████████████ (Sur-Reply at 14) that argument misstates the record.  Dr. Wetstein testified *repeatedly* that ████████████████████████████████████████████████████████████████████████████████████████████████████████████.  Pltfs. Reply at 31-33 & n.31 (citing *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 135 (S.D.N.Y. 2008) and *Rosen v. Textron Inc.*, 369 F. Supp. 2d 204, 209 (D.R.I. 2005) (collecting citations)).[16]  Defendants mischaracterize Dr. Wetstein's deposition testimony in arguing that █████████████████████████████████████████ In fact, Dr.

---

[15]     The cases cited by defendants undermine their position, as these cases recognize that *absent a valid assignment of claims* to the investment manager, the beneficial owner-purchaser of stock – here, Local 282 – has standing to bring Section 10(b) claims. *See Herley*, 2009 WL 3169888, at *9; *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 (2d Cir. 2007); *In re Bard Assocs., Inc.*, No. 09-6243, 2009 WL 4350780, at *1 (10th Cir. Dec. 2, 2009) ("*Huff* holds that an investment advisor lacks Article III standing to assert securities claims based on client losses absent assignments conferring 'legal title to, or a proprietary interest in, the claims.'"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009) ("In light of [*Huff*], this Court finds that Westchester Capital, as an investment advisor without a valid assignment of its clients' claims, did not have Article III standing at the time this Court appointed it lead plaintiff.").

[16]     The cases cited by defendants are inapposite, as they did not involve a plaintiff who explicitly relied on a *typical* investment strategy in making post-disclosure purchases. Sur-Reply at 14-15.  *See Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (addressed at Pltfs. Reply at 33); *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69, 70 & n.7 (S.D.N.Y. 2000).  Moreover, as Judge Sprizzo recognized himself in *Rocco*, "*there is no per se rule*...that 'a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense....'" *Id.* at 136 (emphasis added). *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (addressed at Pltfs. Reply at 33) actually *supports* plaintiffs' position, as the Second Circuit in *McLaughlin* noted the difficulties with individualized proof of reliance in a case alleging misleading advertising against tobacco companies, *in contrast with securities fraud cases* in which the *Basic* fraud-on-the-market presumption alleviates the problem of individualized proof or reliance. *Id.* at 224.

Wetstein stated that 

Pltfs. Reply at 31-33 & n.31.

**C.  Local 282 and McCurley Suffered Cognizable Losses and Are Proper Plaintiffs and Class Representatives**

Local 282 and McCurley held Moody's stock through September 7 and September 4, 2007, respectively.  Having sold their stock *after* the August 20, 2007 partial disclosure of the underlying fraud, they are not "in-and-out" traders.  Pltfs. Reply at 33-34.  Contrary to defendants' suggestion, Judge Kram did not reject the August 20, 2007 event as a partial corrective disclosure. *See, e.g.,* Pltfs. Reply at 24-25.  Nor did Judge Kram dismiss the claims of Local 282 or McCurley.[17]

## CONCLUSION

For the foregoing reasons and all other supporting documents, plaintiffs respectfully request this Court to grant their motion for class certification, thus certifying the Class as previously defined and designating plaintiffs as the Class Representatives.

Dated: New York, New York
November 5, 2010

KIRBY McINERNEY LLP

By: _____
Daniel Hume
dhume@kmllp.com
Ira M. Press
825 Third Avenue, 16th Floor
New York, New York 10022
Tel:  (212) 371-6600
Fax: (212) 751-2540

---

[17]   Defendants' cite to *Marshall v. H&R Block Tax Servs. Inc.*, --- F.R.D. ---, 2010 WL 3734072, at *4 (S.D. Ill. Sept. 17, 2010) to argue that plaintiffs cannot amend their complaint through their class certification papers.  Sur-Reply at 13.  Here, however, *plaintiffs need not amend their complaint; the CAC already alleges the August 20, 2007 partial disclosure and corresponding stock price drop*.  CAC ¶ 400(e); *see also* Coffman Rpt. at ¶¶ 94-97.  As such, *Marshall* is inapposite.

15

Lionel Z. Glancy
Peter A. Binkow
Andy Sohrn
**GLANCY BINKOW & GOLDBERG
LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel:  (310) 201-9150
Fax: (310) 201-9160

Michael K. Yarnoff
Lauren Wagner Pederson
Neena Verma
**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056


Co-lead counsel for Lead Plaintiffs

Christopher Keller
Jonathan Gardner
Serena Hallowell
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel:  (212) 907-0700
Fax: (212) 818-0477


Counsel for Plaintiffs